**2023-1363, -1365, -1366 &-1412**

# United States Court of Appeals for the Federal Circuit

EDGAR ABLAN, *et al.*,

*Plaintiffs,*

CHRISTINA BANKER, TODD BANKER,

*Plaintiffs-Appellees,*

– v. –

UNITED STATES,

*Defendant-Appellant.*

On Appeal from the United States Court of Federal Claims
in Nos. 1:17-cv-01409-CFL, 1:17-cv-09001-CFL
Honorable Charles F. Lettow, Senior Judge

*(For Continuation of Caption See Inside Cover)*

## BRIEF FOR PLAINTIFFS-APPELLEES CHRISTINA BANKER, TODD BANKER AND ELIZABETH BURNHAM

EDWIN A. EASTERBY I
THE EASTERBY LAW FIRM, P.C.
1502 Glourie Drive
Houston, Texas 77055
(713) 936-9365
armi@easterbylaw.com

VUK VUJASINOVIC
VB ATTORNEYS, PLLC
6363 Woodway Drive, Suite 400
Houston, Texas 77057
(877) 724-7800
vuk@vbattorneys.com

ROGER J. MARZULLA
NANCIE G. MARZULLA
MARZULLA LAW, LLC
1150 Connecticut Avenue, NW,
  Suite 1050
Washington, DC 20036
(202) 822-6760
roger@marzulla.com
nancie@marzulla.com

*Counsel for Plaintiffs-Appellees Christina Banker,
Todd Banker, and Elizabeth Burnham*

SEPTEMBER 22, 2023

SANDRA ABDOU, *et al.*,

*Plaintiffs,*

ELIZABETH BURNHAM,

*Plaintiff-Appellee,*

– v. –

UNITED STATES,

*Defendant-Appellant.*

---

*On Appeal from the United States Court of Federal Claims*
*in Nos. 1:17-cv-01786-CFL, 1:17-cv-09001-CFL*
*Honorable Charles F. Lettow, Senior Judge*

---

CHRISTINA MICU, and all others similarly situated, SCOTT HOLLAND,
CATHERINE POPOVICI, KULWANT SIDHU,

*Plaintiffs-Cross-Appellants,*

ELISIO SOARES, SANDRA GARZA RODRIGUEZ, ERICH SCHROEDER,
MARINA AGEYEVA, GLENN PETERS, VIRGINIA HOLCOMB,

*Plaintiffs,*

– v. –

UNITED STATES,

*Defendant-Appellant.*

---

*On Appeal from the United States Court of Federal Claims*
*in Nos. 1:17-cv-01277-CFL, 1:17-cv-09001-CFL*
*Honorable Charles F. Lettow, Senior Judge*

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT
AMENDED
## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1363 (Lead); 23-1365 |
| **Short Case Caption** | Ablan v. United States |
| **Filing Party/Entity** | Christina and Todd Banker; Elizabeth Burnham |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/09/2023

Signature: s/Roger J. Marzulla

Name: Roger J. Marzulla

**FORM 9. Certificate of Interest**

Form 9 (p. 2)
July 2020

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Christina and Todd Banker | | |
| Elizabeth Burnham | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Roger J. Marzulla  (Principal Counsel) Nancie G. Marzulla (Other Counsel) | Marzulla Law, LLC | (Counsel for Christina and Todd Banker and Elizabeth Burnham) |
| Vuk Vujasinovic (Other Counsel) | VB Attorneys | (Counsel for Christina and Todd Banker) |
| Edwin Armistead Easterby (Other Counsel) | William Hart Boundas Easterby, LLP | (Counsel for Elizabeth Burnham) |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable          ☑ Additional pages attached

| | | |
|---|---|---|
| Please see the attached statement | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Statement of Related Cases Under Fed. Cir. R. 47.5

Following Tropical Storm Harvey, the Addicks and Barker Dams impounded storm water in their respective reservoirs causing properties within the reservoir area to flood. *See* Liability Order (Dec. 17, 2019), No. 1:17-cv-09001-CFL, ECF No. 260, p. 2. Owners of these "upstream" properties filed complaints in the Court of Federal Claims alleging the government-induced inundation was an uncompensated taking. *Id.* These cases are collectively known as the "upstream cases."

Using case management techniques comparable to those employed in multi district litigation, the Court of Federal Claims directed the parties to select upstream plaintiffs to serve as bellwether plaintiffs. *Id.,* n. 3. Appellees Todd and Christina Banker were selected as bellwether plaintiffs by Appellant United States. *See* United States' 2nd Notice Regarding Test Property Selection (Mar. 7, 2018), No. 17-9001L, ECF 86.

Appellees Todd and Christina Banker are two of the plaintiffs in *Ablan v. USA* (Fed. Cl.), No. 1:17-cv-01409-CFL. The Court of Federal Claims administratively stayed all upstream complaints, including the *Ablan v. USA* action, on February 1, 2018. *See* Case Management Order (Feb. 01, 2018), No. 17-9001L, ECF 37, ¶ 3.

Pursuant to Rule 40.2 of the Rules of the Court of Federal Claims, upstream cases were consolidated as related cases into the Sub-Master Docket styled *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs v. USA* (Fed. Cl.). *Id*. Currently, counsel believes a complete list of the "related cases" is as follows:

| # | Trial Docket No. | Caption (v. United States) | Appeal Docket No. |
|---|---|---|---|
| 1 | 1:17-cv-01277-CFL | Micu, et al. | 23-1366 |
| 2 | 1:17-cv-01374-CFL | Jacobson, et al. | N/A |
| 3 | 1:17-cv-01409-CFL | Ablan, et al. | 23-1363 |
| 4 | 1:17-cv-01459-CFL | Cutler, et al. | N/A |
| 5 | 1:17-cv-01460-CFL | Hankinson | N/A |
| 6 | 1:17-cv-01559-CFL | Reyes, et al. | N/A |
| 7 | 1:17-cv-01569-CFL | Young | N/A |
| 8 | 1:17-cv-01582-CFL | Mumba, et al. | N/A |
| 9 | 1:17-cv-01636-CFL | Gilbert, et al. | N/A |
| 10 | 1:17-cv-01650-CFL | Davey | N/A |
| 11 | 1:17-cv-01665-CFL | Akushe | N/A |
| 12 | 1:17-cv-01666-CFL | Alarcon | N/A |
| 13 | 1:17-cv-01667-CFL | Aragon | N/A |
| 14 | 1:17-cv-01668-CFL | Bader | N/A |
| 15 | 1:17-cv-01669-CFL | Atang | N/A |
| 16 | 1:17-cv-01670-CFL | Bohorquez | N/A |
| 17 | 1:17-cv-01671-CFL | Brede | N/A |
| 18 | 1:17-cv-01672-CFL | Brede | N/A |
| 19 | 1:17-cv-01673-CFL | Brede | N/A |
| 20 | 1:17-cv-01674-CFL | Callirgos | N/A |
| 21 | 1:17-cv-01675-CFL | Carroll | N/A |
| 22 | 1:17-cv-01676-CFL | Chambers | N/A |
| 23 | 1:17-cv-01677-CFL | Chavarria | N/A |
| 24 | 1:17-cv-01678-CFL | Christman | N/A |
| 25 | 1:17-cv-01692-CFL | Kaffenes | N/A |
| 26 | 1:17-cv-01693-CFL | White | N/A |
| 27 | 1:17-cv-01694-CFL | Timmons | N/A |
| 28 | 1:17-cv-01695-CFL | Hundley | N/A |
| 29 | 1:17-cv-01696-CFL | Li | N/A |
| 30 | 1:17-cv-01697-CFL | Negrin | N/A |
| 31 | 1:17-cv-01698-CFL | Kenny | N/A |
| 32 | 1:17-cv-01699-CFL | Robinson | N/A |
| 33 | 1:17-cv-01700-CFL | Jansen | N/A |

| 34 | 1:17-cv-01701-CFL | Sebasco | N/A |
| 35 | 1:17-cv-01702-CFL | Sanchez | N/A |
| 36 | 1:17-cv-01703-CFL | Negrin | N/A |
| 37 | 1:17-cv-01704-CFL | Ramsey | N/A |
| 38 | 1:17-cv-01705-CFL | Lankowski | N/A |
| 39 | 1:17-cv-01706-CFL | Tehranchi | N/A |
| 40 | 1:17-cv-01707-CFL | Vu | N/A |
| 41 | 1:17-cv-01708-CFL | Mendoza | N/A |
| 42 | 1:17-cv-01709-CFL | Thoma | N/A |
| 43 | 1:17-cv-01710-CFL | Mercado | N/A |
| 44 | 1:17-cv-01711-CFL | Kelley | N/A |
| 45 | 1:17-cv-01712-CFL | Grant | N/A |
| 46 | 1:17-cv-01713-CFL | Lathrom | N/A |
| 47 | 1:17-cv-01714-CFL | Podolski | N/A |
| 48 | 1:17-cv-01716-CFL | Manzano | N/A |
| 49 | 1:17-cv-01717-CFL | Llorens | N/A |
| 50 | 1:17-cv-01718-CFL | Marino | N/A |
| 51 | 1:17-cv-01719-CFL | Cuenca | N/A |
| 52 | 1:17-cv-01720-CFL | Dengel | N/A |
| 53 | 1:17-cv-01721-CFL | Money | N/A |
| 54 | 1:17-cv-01722-CFL | Washburn | N/A |
| 55 | 1:17-cv-01723-CFL | Malkin | N/A |
| 56 | 1:17-cv-01724-CFL | Huizar | N/A |
| 57 | 1:17-cv-01726-CFL | Cornelius | N/A |
| 58 | 1:17-cv-01727-CFL | Guerra | N/A |
| 59 | 1:17-cv-01728-CFL | Enriquez | N/A |
| 60 | 1:17-cv-01729-CFL | Mack | N/A |
| 61 | 1:17-cv-01730-CFL | James | N/A |
| 62 | 1:17-cv-01780-CFL | Ahmad, et al. | N/A |
| 63 | 1:17-cv-01786-CFL | Abdou, et al. | 23-1365 |
| 64 | 1:17-cv-01798-CFL | Aponiuk, et al. | N/A |
| 65 | 1:17-cv-01805-CFL | Boone, et al. | N/A |
| 66 | 1:17-cv-01868-CFL | Luo | N/A |
| 67 | 1:17-cv-01881-CFL | Abousaway, et al. | N/A |
| 68 | 1:17-cv-01937-CFL | Lei | N/A |
| 69 | 1:17-cv-01950-CFL | Clampett, et al. | N/A |
| 70 | 1:17-cv-01951-CFL | Anderson, et al. | N/A |
| 71 | 1:17-cv-01952-CFL | Acevedo, et al. | N/A |
| 72 | 1:17-cv-02004-CFL | Anthony, et al. | N/A |
| 73 | 1:17-cv-02028-CFL | Martinez, et al. | N/A |
| 74 | 1:17-cv-02035-CFL | Qiu | N/A |
| 75 | 1:17-cv-02045-CFL | Xu | N/A |
| 76 | 1:17-cv-1652-CFL | Blayney, et al. | N/A |
| 77 | 1:18-cv-00045-CFL | Xi | N/A |

| 78 | 1:18-cv-00065-CFL | Jungkurth, et al. | N/A |
|----|-------------------|-------------------|-----|
| 79 | 1:18-cv-00114-CFL | Keeton | N/A |
| 80 | 1:18-cv-00163-CFL | Jabr, et al. | N/A |
| 81 | 1:18-cv-00171-CFL | Rivera, et al. | N/A |
| 82 | 1:18-cv-00320-CFL | M&R Meat Market Ltd, et al. | N/A |
| 83 | 1:18-cv-00343-CFL | Saman, et al. | N/A |
| 84 | 1:18-cv-00467-CFL | Fleming, et al. | N/A |
| 85 | 1:18-cv-00570-CFL | Braniff, et al. | N/A |
| 86 | 1:18-cv-00673-CFL | Butler, et al. | N/A |
| 87 | 1:18-cv-00765-CFL | Sandler, et al. | N/A |
| 88 | 1:18-cv-00840-CFL | Fry & Mason Rd Office Building At Cinco Ranch LLC | N/A |
| 89 | 1:18-cv-00851-CFL | 21St Century Centennial Insurance Co., et al. | N/A |
| 90 | 1:18-cv-00854-CFL | Airdrome Holdings, Inc., et al. | N/A |
| 91 | 1:18-cv-00855-CFL | 998 Qin Family I, Llc, et al. | N/A |
| 92 | 1:18-cv-00993-CFL | Barnes, et al. | N/A |
| 93 | 1:18-cv-01023-CFL | Sanchez, et al. | N/A |
| 94 | 1:18-cv-01102-CFL | Liberty Mutual Fire Insurance Company, et al. | N/A |
| 95 | 1:18-cv-01185-CFL | Gomez | N/A |
| 96 | 1:18-cv-01186-CFL | Masterson | N/A |
| 97 | 1:18-cv-01187-CFL | Morales | N/A |
| 98 | 1:18-cv-01188-CFL | Semanko | N/A |
| 99 | 1:18-cv-01189-CFL | Spellings | N/A |
| 100 | 1:18-cv-01213-CFL | Dickerson, et al. | N/A |
| 101 | 1:18-cv-01286-CFL | Garcia, et al. | N/A |
| 102 | 1:18-cv-01289-CFL | Aasgaard, et al. | N/A |
| 103 | 1:18-cv-01330-CFL | Bass, et al. | N/A |
| 104 | 1:18-cv-01940-CFL | Baltazar, et al. | N/A |
| 105 | 1:18-cv-01969-CFL | Kenny, et al. | N/A |
| 106 | 1:19-cv-00037-CFL | Echeverria, et al. | N/A |
| 107 | 1:19-cv-00058-CFL | Siddiqi | N/A |
| 108 | 1:19-cv-00126-CFL | Seaback, et al. | N/A |
| 109 | 1:19-cv-00526-CFL | Hagen | N/A |
| 110 | 1:19-cv-00527-CFL | Menjivar | N/A |
| 111 | 1:19-cv-00528-CFL | Montano, Jr. | N/A |
| 112 | 1:19-cv-00602-CFL | Dulaney | N/A |
| 113 | 1:19-cv-00614-CFL | Maldonado, et al. | N/A |
| 114 | 1:19-cv-00617-CFL | Tovar | N/A |
| 115 | 1:19-cv-00618-CFL | Alvarez, et al. | N/A |
| 116 | 1:19-cv-00619-CFL | Anastasio, et al. | N/A |

| 117 | 1:19-cv-00624-CFL | Alghafir, et al. | N/A |
| 118 | 1:19-cv-00645-CFL | Aguirre, et al. | N/A |
| 119 | 1:19-cv-00646-CFL | Adair, et al. | N/A |
| 120 | 1:19-cv-00656-CFL | Herb | N/A |
| 121 | 1:19-cv-00657-CFL | Powell, et al. | N/A |
| 122 | 1:19-cv-00665-CFL | Coleman | N/A |
| 123 | 1:19-cv-00724-CFL | Howse, et al. | N/A |
| 124 | 1:19-cv-00834-CFL | Hill, Jr. | N/A |
| 125 | 1:19-cv-00864-CFL | Adair, et al. | N/A |
| 126 | 1:19-cv-00865-CFL | Adebo, et al. | N/A |
| 127 | 1:19-cv-01206-CFL | Amica | N/A |
| 128 | 1:19-cv-01209-CFL | Underwriters | N/A |
| 129 | 1:19-cv-01267-CFL | A&K Trucking, et al. | N/A |
| 130 | 1:19-cv-01275-CFL | Neugebauer, et al. | N/A |
| 131 | 1:19-cv-01276-CFL | Virey, et al. | N/A |
| 132 | 1:19-cv-01657-CFL | Archer, et al. | N/A |
| 133 | 1:19-cv-01758-CFL | Abbruscato, et al. | N/A |
| 134 | 1:19-cv-01769-CFL | Alisha Lodging Group, LLC, et al. | N/A |
| 135 | 1:20-cv-00297-CFL | Agnihotri, et al. | N/A |
| 136 | 1:20-cv-00302-CFL | Claycreek Mini Storage, Ltd. | N/A |
| 137 | 1:20-cv-00305-CFL | Aldana, et al. | N/A |
| 138 | 1:20-cv-00306-CFL | Burr, et al. | N/A |
| 139 | 1:20-cv-00386-CFL | Yan | N/A |
| 140 | 1:20-cv-00753-CFL | Salgado | N/A |
| 141 | 1:20-cv-00772-CFL | Max v.USA | N/A |
| 142 | 1:20-cv-00918-CFL | Allgood, et al. | N/A |
| 143 | 1:20-cv-00920-CFL | Adams, et al. | N/A |
| 144 | 1:20-cv-00987-CFL | Cunningham | N/A |
| 145 | 1:20-cv-01223-CFL | Saidian | N/A |
| 146 | 1:20-cv-01403-CFL | Belman | N/A |
| 147 | 1:20-cv-01452-CFL | Griffin, et al. | N/A |
| 148 | 1:20-cv-01524-CFL | Abbey-Barker LLC | N/A |
| 149 | 1:20-cv-01594-CFL | Rosilez, et al. | N/A |
| 150 | 1:20-cv-01634-CFL | Heinold | N/A |
| 151 | 1:21-cv-01051-CFL | Consumers County Mutual, et al. | N/A |
| 152 | 1:21-cv-01180-CFL | Aaqvi | N/A |
| 153 | 1:21-cv-01200-CFL | Da Costa, et al. | N/A |
| 154 | 1:21-cv-01481-CFL | Trexis Insurance Company, et al. | N/A |
| 155 | 1:21-cv-01722-CFL | Amaro v. US, et al. | N/A |
| 156 | 1:21-cv-01723-CFL | Aguilar-Morales, et al. | N/A |
| 157 | 1:21-cv-02314-CFL | Abbott, et al. | N/A |
| 158 | 1:22-cv-00006-CFL | Wilhelm | N/A |

| 159 | 1:22-cv-00138-CFL | Galic, et al. | N/A |
| 160 | 1:22-cv-00342-CFL | Carroll | N/A |
| 161 | 1:22-cv-00383-CFL | Napp | N/A |
| 162 | 1:22-cv-00391-CFL | Gonzalez | N/A |
| 163 | 1:22-cv-00392-CFL | O'Neal | N/A |
| 164 | 1:22-cv-00917-CFL | Abdulla | N/A |
| 165 | 1:22-cv-00920-CFL | Adjei | N/A |
| 166 | 1:22-cv-00921-CFL | Afanou | N/A |
| 167 | 1:22-cv-00923-CFL | Villatoro | N/A |
| 168 | 1:22-cv-00925-CFL | Ahmed | N/A |
| 169 | 1:22-cv-00926-CFL | Akerman | N/A |
| 170 | 1:22-cv-00927-CFL | Christ Apostolic Church | N/A |
| 171 | 1:22-cv-00928-CFL | Sanctuary of Prayer | N/A |
| 172 | 1:22-cv-00931-CFL | Akhtar | N/A |
| 173 | 1:22-cv-00932-CFL | Andujar | N/A |
| 174 | 1:22-cv-00933-CFL | Anfinson | N/A |
| 175 | 1:22-cv-00935-CFL | Arboleda | N/A |
| 176 | 1:22-cv-00936-CFL | Arcos | N/A |
| 177 | 1:22-cv-00939-CFL | Aronson | N/A |
| 178 | 1:22-cv-00940-CFL | Ayesh | N/A |
| 179 | 1:22-cv-00941-CFL | Bankston | N/A |
| 180 | 1:22-cv-00942-CFL | Barreto | N/A |
| 181 | 1:22-cv-00943-CFL | Begum | N/A |
| 182 | 1:22-cv-00944-CFL | Benhar | N/A |
| 183 | 1:22-cv-00945-CFL | Bennetsen | N/A |
| 184 | 1:22-cv-00946-CFL | Benson | N/A |
| 185 | 1:22-cv-00947-CFL | Black | N/A |
| 186 | 1:22-cv-00948-CFL | Boumjahed | N/A |
| 187 | 1:22-cv-00949-CFL | Bradford | N/A |
| 188 | 1:22-cv-00950-CFL | Bradley | N/A |
| 189 | 1:22-cv-00951-CFL | Brown | N/A |
| 190 | 1:22-cv-00952-CFL | Brown | N/A |
| 191 | 1:22-cv-00953-CFL | Brown | N/A |
| 192 | 1:22-cv-00954-CFL | Burroughs | N/A |
| 193 | 1:22-cv-00955-CFL | Byington | N/A |
| 194 | 1:22-cv-00956-CFL | Davego Xtreme Clothes | N/A |
| 195 | 1:22-cv-00958-CFL | Cadwallader | N/A |
| 196 | 1:22-cv-00959-CFL | Cagliano | N/A |
| 197 | 1:22-cv-00960-CFL | Capstone Luxury Rentals | N/A |
| 198 | 1:22-cv-00961-CFL | Jones | N/A |
| 199 | 1:22-cv-00962-CFL | Chambers | N/A |
| 200 | 1:22-cv-00963-CFL | Cho | N/A |
| 201 | 1:22-cv-00964-CFL | Clemmons | N/A |
| 202 | 1:22-cv-00965-CFL | Copening | N/A |

| 203 | 1:22-cv-00966-CFL | Coyer | N/A |
|---|---|---|---|
| 204 | 1:22-cv-00967-CFL | Craymer | N/A |
| 205 | 1:22-cv-00968-CFL | Cruz-Cotton | N/A |
| 206 | 1:22-cv-00969-CFL | Cruz | N/A |
| 207 | 1:22-cv-00970-CFL | Cubillos | N/A |
| 208 | 1:22-cv-00971-CFL | Cuevas | N/A |
| 209 | 1:22-cv-00972-CFL | Flor de Cuba TX Inc | N/A |
| 210 | 1:22-cv-00973-CFL | Lee's Donuts | N/A |
| 211 | 1:22-cv-00974-CFL | Viajes Latinos | N/A |
| 212 | 1:22-cv-00975-CFL | Dalton | N/A |
| 213 | 1:22-cv-00977-CFL | Danaher | N/A |
| 214 | 1:22-cv-00978-CFL | Dangtran | N/A |
| 215 | 1:22-cv-00979-CFL | Davis | N/A |
| 216 | 1:22-cv-00980-CFL | De La Cruz-Ortiz | N/A |
| 217 | 1:22-cv-00982-CFL | De Quesada | N/A |
| 218 | 1:22-cv-00983-CFL | Del Carmen Hazelwood | N/A |
| 219 | 1:22-cv-00984-CFL | Delany | N/A |
| 220 | 1:22-cv-00985-CFL | Diaz | N/A |
| 221 | 1:22-cv-00987-CFL | Dziadek | N/A |
| 222 | 1:22-cv-00990-CFL | Dziadek | N/A |
| 223 | 1:22-cv-00991-CFL | Elmasri | N/A |
| 224 | 1:22-cv-00992-CFL | Estrada | N/A |
| 225 | 1:22-cv-00993-CFL | Havana-Caribe | N/A |
| 226 | 1:22-cv-00996-CFL | Flores | N/A |
| 227 | 1:22-cv-00997-CFL | Flores | N/A |
| 228 | 1:22-cv-00998-CFL | Fulgham | N/A |
| 229 | 1:22-cv-00999-CFL | Gamble | N/A |
| 230 | 1:22-cv-01000-CFL | Gannon | N/A |
| 231 | 1:22-cv-01001-CFL | Garcia | N/A |
| 232 | 1:22-cv-01002-CFL | Gardezi | N/A |
| 233 | 1:22-cv-01003-CFL | Garza | N/A |
| 234 | 1:22-cv-01004-CFL | Garza | N/A |
| 235 | 1:22-cv-01005-CFL | Garza | N/A |
| 236 | 1:22-cv-01006-CFL | Gbordzoe | N/A |
| 237 | 1:22-cv-01007-CFL | Georgas | N/A |
| 238 | 1:22-cv-01008-CFL | Ghosh | N/A |
| 239 | 1:22-cv-01009-CFL | Gooden | N/A |
| 240 | 1:22-cv-01010-CFL | Graham | N/A |
| 241 | 1:22-cv-01019-CFL | Grayson | N/A |
| 242 | 1:22-cv-01020-CFL | Grissin | N/A |
| 243 | 1:22-cv-01021-CFL | Grundy | N/A |
| 244 | 1:22-cv-01023-CFL | Gutierrez | N/A |
| 245 | 1:22-cv-01024-CFL | Hamling | N/A |
| 246 | 1:22-cv-01026-CFL | Hammersley | N/A |

| 247 | 1:22-cv-01027-CFL | Handy | N/A |
|-----|-------------------|-------|-----|
| 248 | 1:22-cv-01028-CFL | Henderson | N/A |
| 249 | 1:22-cv-01029-CFL | Hernandez | N/A |
| 250 | 1:22-cv-01030-CFL | Holman | N/A |
| 251 | 1:22-cv-01039-CFL | Hossain | N/A |
| 252 | 1:22-cv-01040-CFL | Huerta | N/A |
| 253 | 1:22-cv-01041-CFL | Jackson | N/A |
| 254 | 1:22-cv-01042-CFL | Jallah | N/A |
| 255 | 1:22-cv-01043-CFL | Jocz | N/A |
| 256 | 1:22-cv-01044-CFL | Jones | N/A |
| 257 | 1:22-cv-01045-CFL | Jones | N/A |
| 258 | 1:22-cv-01046-CFL | Jones | N/A |
| 259 | 1:22-cv-01047-CFL | Kamara | N/A |
| 260 | 1:22-cv-01049-CFL | Kerby | N/A |
| 261 | 1:22-cv-01051-CFL | Khan | N/A |
| 262 | 1:22-cv-01053-CFL | Lakhany | N/A |
| 263 | 1:22-cv-01054-CFL | Larrivee | N/A |
| 264 | 1:22-cv-01055-CFL | Leone | N/A |
| 265 | 1:22-cv-01056-CFL | Leroy Carter | N/A |
| 266 | 1:22-cv-01066-CFL | Lester | N/A |
| 267 | 1:22-cv-01067-CFL | Leuschen | N/A |
| 268 | 1:22-cv-01068-CFL | Loera | N/A |
| 269 | 1:22-cv-01069-CFL | Lopez | N/A |
| 270 | 1:22-cv-01070-CFL | Lopez | N/A |
| 271 | 1:22-cv-01071-CFL | Lu | N/A |
| 272 | 1:22-cv-01072-CFL | Luman | N/A |
| 273 | 1:22-cv-01073-CFL | Lyon | N/A |
| 274 | 1:22-cv-01074-CFL | Mahajan | N/A |
| 275 | 1:22-cv-01075-CFL | Marnitz | N/A |
| 276 | 1:22-cv-01076-CFL | Martin | N/A |
| 277 | 1:22-cv-01077-CFL | Massey | N/A |
| 278 | 1:22-cv-01078-CFL | Maynard | N/A |
| 279 | 1:22-cv-01079-CFL | McCreary | N/A |
| 280 | 1:22-cv-01080-CFL | Medrano | N/A |
| 281 | 1:22-cv-01081-CFL | Melendez | N/A |
| 282 | 1:22-cv-01082-CFL | Miller | N/A |
| 283 | 1:22-cv-01083-CFL | Milton | N/A |
| 284 | 1:22-cv-01084-CFL | Mingledorff | N/A |
| 285 | 1:22-cv-01085-CFL | Mitchell | N/A |
| 286 | 1:22-cv-01086-CFL | Mitchell | N/A |
| 287 | 1:22-cv-01087-CFL | Mondragon | N/A |
| 288 | 1:22-cv-01088-CFL | Mondragon | N/A |
| 289 | 1:22-cv-01089-CFL | Moodley | N/A |
| 290 | 1:22-cv-01090-CFL | Morgan | N/A |

| 291 | 1:22-cv-01091-CFL | Postal Plus Copy Center | N/A |
|-----|-------------------|--------------------------|-----|
| 292 | 1:22-cv-01100-CFL | Mosquera | N/A |
| 293 | 1:22-cv-01101-CFL | Moss | N/A |
| 294 | 1:22-cv-01102-CFL | Munoz | N/A |
| 295 | 1:22-cv-01103-CFL | Navissi | N/A |
| 296 | 1:22-cv-01104-CFL | Ndole | N/A |
| 297 | 1:22-cv-01105-CFL | Nesbitt | N/A |
| 298 | 1:22-cv-01106-CFL | Nguyen | N/A |
| 299 | 1:22-cv-01107-CFL | O'Bannon | N/A |
| 300 | 1:22-cv-01108-CFL | O'Brando | N/A |
| 301 | 1:22-cv-01109-CFL | Odusoga | N/A |
| 302 | 1:22-cv-01110-CFL | Ogadi | N/A |
| 303 | 1:22-cv-01111-CFL | Olateru-Olagbegi | N/A |
| 304 | 1:22-cv-01112-CFL | Onaghise | N/A |
| 305 | 1:22-cv-01113-CFL | O'Neill | N/A |
| 306 | 1:22-cv-01114-CFL | Onwas | N/A |
| 307 | 1:22-cv-01115-CFL | Orick | N/A |
| 308 | 1:22-cv-01116-CFL | Ormeno | N/A |
| 309 | 1:22-cv-01137-CFL | O'Shaughnessy | N/A |
| 310 | 1:22-cv-01138-CFL | Palmer | N/A |
| 311 | 1:22-cv-01139-CFL | Palmer | N/A |
| 312 | 1:22-cv-01140-CFL | Palmerton | N/A |
| 313 | 1:22-cv-01141-CFL | Parker | N/A |
| 314 | 1:22-cv-01142-CFL | Parks | N/A |
| 315 | 1:22-cv-01143-CFL | Parson | N/A |
| 316 | 1:22-cv-01144-CFL | Pavel | N/A |
| 317 | 1:22-cv-01145-CFL | Peavy | N/A |
| 318 | 1:22-cv-01146-CFL | Pegoda | N/A |
| 319 | 1:22-cv-01147-CFL | Perez | N/A |
| 320 | 1:22-cv-01154-CFL | Pfeiffer | N/A |
| 321 | 1:22-cv-01155-CFL | Romo | N/A |
| 322 | 1:22-cv-01156-CFL | Portillo | N/A |
| 323 | 1:22-cv-01157-CFL | Ramirez | N/A |
| 324 | 1:22-cv-01158-CFL | Ramos | N/A |
| 325 | 1:22-cv-01159-CFL | Reyes | N/A |
| 326 | 1:22-cv-01160-CFL | Richards-Lewis | N/A |
| 327 | 1:22-cv-01161-CFL | Rienstra | N/A |
| 328 | 1:22-cv-01162-CFL | Riesmeyer | N/A |
| 329 | 1:22-cv-01163-CFL | Rivera | N/A |
| 330 | 1:22-cv-01164-CFL | Rivera | N/A |
| 331 | 1:22-cv-01165-CFL | Robertson | N/A |
| 332 | 1:22-cv-01166-CFL | Rodriguez | N/A |
| 333 | 1:22-cv-01168-CFL | Ruiz | N/A |
| 334 | 1:22-cv-01169-CFL | Sabat | N/A |

| 335 | 1:22-cv-01170-CFL | Sadler | N/A |
| 336 | 1:22-cv-01171-CFL | Saenz | N/A |
| 337 | 1:22-cv-01175-CFL | Bella Skin Spa | N/A |
| 338 | 1:22-cv-01176-CFL | Sanchez | N/A |
| 339 | 1:22-cv-01177-CFL | Sauceda | N/A |
| 340 | 1:22-cv-01178-CFL | Secor | N/A |
| 341 | 1:22-cv-01179-CFL | Schroedle | N/A |
| 342 | 1:22-cv-01180-CFL | Scott | N/A |
| 343 | 1:22-cv-01181-CFL | Scroggs | N/A |
| 344 | 1:22-cv-01182-CFL | Shah | N/A |
| 345 | 1:22-cv-01183-CFL | Sharp | N/A |
| 346 | 1:22-cv-01186-CFL | Shaw | N/A |
| 347 | 1:22-cv-01187-CFL | Shaw | N/A |
| 348 | 1:22-cv-01188-CFL | ShoyKet | N/A |
| 349 | 1:22-cv-01189-CFL | Siddiqi | N/A |
| 350 | 1:22-cv-01190-CFL | Silva | N/A |
| 351 | 1:22-cv-01191-CFL | Simpson | N/A |
| 352 | 1:22-cv-01192-CFL | Smith | N/A |
| 353 | 1:22-cv-01193-CFL | Sparkman | N/A |
| 354 | 1:22-cv-01195-CFL | Sparks | N/A |
| 355 | 1:22-cv-01196-CFL | Stagg | N/A |
| 356 | 1:22-cv-01197-CFL | Stevens | N/A |
| 357 | 1:22-cv-01198-CFL | Stumm | N/A |
| 358 | 1:22-cv-01199-CFL | Suh | N/A |
| 359 | 1:22-cv-01200-CFL | Tata | N/A |
| 360 | 1:22-cv-01202-CFL | Taylor | N/A |
| 361 | 1:22-cv-01203-CFL | Tennyson | N/A |
| 362 | 1:22-cv-01204-CFL | Thomas | N/A |
| 363 | 1:22-cv-01205-CFL | Tishkova | N/A |
| 364 | 1:22-cv-01225-CFL | Tooley | N/A |
| 365 | 1:22-cv-01226-CFL | Trevino | N/A |
| 366 | 1:22-cv-01227-CFL | Truch | N/A |
| 367 | 1:22-cv-01228-CFL | Tupas | N/A |
| 368 | 1:22-cv-01231-CFL | Umanah | N/A |
| 369 | 1:22-cv-01232-CFL | Gascon | N/A |
| 370 | 1:22-cv-01233-CFL | Varsamis | N/A |
| 371 | 1:22-cv-01234-CFL | Villegas | N/A |
| 372 | 1:22-cv-01235-CFL | Villegas | N/A |
| 373 | 1:22-cv-01236-CFL | Vitullo | N/A |
| 374 | 1:22-cv-01237-CFL | Vu | N/A |
| 375 | 1:22-cv-01238-CFL | Vyssotski | N/A |
| 376 | 1:22-cv-01239-CFL | Walker | N/A |
| 377 | 1:22-cv-01240-CFL | Watson | N/A |
| 378 | 1:22-cv-01241-CFL | Wells | N/A |

| 379 | 1:22-cv-01242-CFL | White | N/A |
| 380 | 1:22-cv-01243-CFL | Whitfield | N/A |
| 381 | 1:22-cv-01244-CFL | Woheidy | N/A |
| 382 | 1:22-cv-01245-CFL | Yow | N/A |
| 383 | 1:22-cv-01246-CFL | Cinco Ranch Nails Design | N/A |
| 384 | 1:22-cv-01247-CFL | JD Items | N/A |
| 385 | 1:22-cv-01693-CFL | Beviamo International LLC | N/A |
| 386 | 1:22-cv-01694-CFL | Autrey | N/A |
| 387 | 1:22-cv-01761-CFL | Clodine II Investors LLC, et al. | N/A |
| 388 | 1:22-cv-01816-CFL | Woodard | N/A |
| 389 | 1:22-cv-01817-CFL | Hunek | N/A |
| 390 | 1:22-cv-01839-CFL | Avina | N/A |
| 391 | 1:22-cv-01840-CFL | Kim | N/A |
| 392 | 1:22-cv-01841-CFL | Sahara Group LP | N/A |
| 393 | 1:22-cv-01842-CFL | Barnes | N/A |
| 394 | 1:22-cv-01843-CFL | Carey | N/A |
| 395 | 1:22-cv-01844-CFL | Mitchell | N/A |
| 396 | 1:22-cv-01845-CFL | Fassetta | N/A |
| 397 | 1:22-cv-01846-CFL | Gonzalez | N/A |
| 398 | 1:22-cv-01847-CFL | Rubio | N/A |
| 399 | 1:22-cv-01848-CFL | Smith | N/A |
| 400 | 1:22-cv-01849-CFL | Stahlhut | N/A |
| 401 | 1:22-cv-01850-CFL | Stahlhut | N/A |
| 402 | 1:22-cv-01851-CFL | Stahlhut | N/A |
| 403 | 1:22-cv-01868-CFL | Gloria | N/A |
| 404 | 1:22-cv-01869-CFL | Sanchez | N/A |
| 405 | 1:23-cv-00011-CFL | Guajardo | N/A |

## Statement of Related Cases Under Fed. Cir. R. 47.5

Following Tropical Storm Harvey, the Addicks and Barker Dams impounded storm water in their respective reservoirs causing properties within the reservoir area to flood. *See* Liability Order (Dec. 17, 2019), No. 1:17-cv-09001-CFL, ECF No. 260, p. 2. Owners of these "upstream" properties filed complaints in the Court of Federal Claims alleging the government-induced inundation was an uncompensated taking. *Id.* These cases are collectively known as the "upstream cases."

Using case management techniques comparable to those employed in multi district litigation, the Court of Federal Claims directed the parties to select upstream plaintiffs to serve as bellwether plaintiffs. *Id.,* n. 3. Appellee Elizabeth Burnham was selected as a bellwether plaintiff by Appellant United States.[1] *See* United States' 2nd Notice Regarding Test Property Selection (Mar. 7, 2018), No. 17-9001L, ECF 86.

Appellee Elizabeth Burnham is one of the plaintiffs in *Abdou. v. USA* (Fed. Cl.), No. 1:17-cv-01786-SGB. The Court of Federal Claims administratively stayed all upstream complaints, including the *Abdou. v. USA* action, on February 1, 2018. *See* Case Management Order (Feb. 01, 2018), No. 17-9001L, ECF 37, ¶ 3.

Pursuant to Rule 40.2 of the Rules of the Court of Federal Claims, upstream cases were consolidated as related cases into the Sub-Master Docket styled *In re*

---

[1] Josena Arquieta, Ms. Burnham's co-owner of the underlying real property, was joined as a co-plaintiff in March 2022. *See* Order (Mar. 31, 2022), No. 17-1786L, ECF 9. Ms. Arquieta was not a bellwether plaintiff and is not a party to this appeal.

*Upstream Addicks and Barker (Texas) Flood-Control Reservoirs v. USA* (Fed. Cl.).

*Id.* Currently, counsel believes a complete list of the "related cases" is as follows:

| # | Trial Docket No. | Caption (v. United States) | Appeal Docket No. |
|---|------------------|----------------------------|-------------------|
| 1 | 1:17-cv-01277-CFL | Micu, et al. | 23-1366 |
| 2 | 1:17-cv-01374-CFL | Jacobson, et al. | N/A |
| 3 | 1:17-cv-01409-CFL | Ablan, et al. | 23-1363 |
| 4 | 1:17-cv-01459-CFL | Cutler, et al. | N/A |
| 5 | 1:17-cv-01460-CFL | Hankinson | N/A |
| 6 | 1:17-cv-01559-CFL | Reyes, et al. | N/A |
| 7 | 1:17-cv-01569-CFL | Young | N/A |
| 8 | 1:17-cv-01582-CFL | Mumba, et al. | N/A |
| 9 | 1:17-cv-01636-CFL | Gilbert, et al. | N/A |
| 10 | 1:17-cv-01650-CFL | Davey | N/A |
| 11 | 1:17-cv-01665-CFL | Akushe | N/A |
| 12 | 1:17-cv-01666-CFL | Alarcon | N/A |
| 13 | 1:17-cv-01667-CFL | Aragon | N/A |
| 14 | 1:17-cv-01668-CFL | Bader | N/A |
| 15 | 1:17-cv-01669-CFL | Atang | N/A |
| 16 | 1:17-cv-01670-CFL | Bohorquez | N/A |
| 17 | 1:17-cv-01671-CFL | Brede | N/A |
| 18 | 1:17-cv-01672-CFL | Brede | N/A |
| 19 | 1:17-cv-01673-CFL | Brede | N/A |
| 20 | 1:17-cv-01674-CFL | Callirgos | N/A |
| 21 | 1:17-cv-01675-CFL | Carroll | N/A |
| 22 | 1:17-cv-01676-CFL | Chambers | N/A |
| 23 | 1:17-cv-01677-CFL | Chavarria | N/A |
| 24 | 1:17-cv-01678-CFL | Christman | N/A |
| 25 | 1:17-cv-01692-CFL | Kaffenes | N/A |
| 26 | 1:17-cv-01693-CFL | White | N/A |
| 27 | 1:17-cv-01694-CFL | Timmons | N/A |
| 28 | 1:17-cv-01695-CFL | Hundley | N/A |
| 29 | 1:17-cv-01696-CFL | Li | N/A |
| 30 | 1:17-cv-01697-CFL | Negrin | N/A |
| 31 | 1:17-cv-01698-CFL | Kenny | N/A |
| 32 | 1:17-cv-01699-CFL | Robinson | N/A |
| 33 | 1:17-cv-01700-CFL | Jansen | N/A |
| 34 | 1:17-cv-01701-CFL | Sebasco | N/A |
| 35 | 1:17-cv-01702-CFL | Sanchez | N/A |
| 36 | 1:17-cv-01703-CFL | Negrin | N/A |
| 37 | 1:17-cv-01704-CFL | Ramsey | N/A |
| 38 | 1:17-cv-01705-CFL | Lankowski | N/A |

| 39 | 1:17-cv-01706-CFL | Tehranchi | N/A |
|----|-------------------|-----------|-----|
| 40 | 1:17-cv-01707-CFL | Vu | N/A |
| 41 | 1:17-cv-01708-CFL | Mendoza | N/A |
| 42 | 1:17-cv-01709-CFL | Thoma | N/A |
| 43 | 1:17-cv-01710-CFL | Mercado | N/A |
| 44 | 1:17-cv-01711-CFL | Kelley | N/A |
| 45 | 1:17-cv-01712-CFL | Grant | N/A |
| 46 | 1:17-cv-01713-CFL | Lathrom | N/A |
| 47 | 1:17-cv-01714-CFL | Podolski | N/A |
| 48 | 1:17-cv-01716-CFL | Manzano | N/A |
| 49 | 1:17-cv-01717-CFL | Llorens | N/A |
| 50 | 1:17-cv-01718-CFL | Marino | N/A |
| 51 | 1:17-cv-01719-CFL | Cuenca | N/A |
| 52 | 1:17-cv-01720-CFL | Dengel | N/A |
| 53 | 1:17-cv-01721-CFL | Money | N/A |
| 54 | 1:17-cv-01722-CFL | Washburn | N/A |
| 55 | 1:17-cv-01723-CFL | Malkin | N/A |
| 56 | 1:17-cv-01724-CFL | Huizar | N/A |
| 57 | 1:17-cv-01726-CFL | Cornelius | N/A |
| 58 | 1:17-cv-01727-CFL | Guerra | N/A |
| 59 | 1:17-cv-01728-CFL | Enriquez | N/A |
| 60 | 1:17-cv-01729-CFL | Mack | N/A |
| 61 | 1:17-cv-01730-CFL | James | N/A |
| 62 | 1:17-cv-01780-CFL | Ahmad, et al. | N/A |
| 63 | 1:17-cv-01786-CFL | Abdou, et al. | 23-1365 |
| 64 | 1:17-cv-01798-CFL | Aponiuk, et al. | N/A |
| 65 | 1:17-cv-01805-CFL | Boone, et al. | N/A |
| 66 | 1:17-cv-01868-CFL | Luo | N/A |
| 67 | 1:17-cv-01881-CFL | Abousaway, et al. | N/A |
| 68 | 1:17-cv-01937-CFL | Lei | N/A |
| 69 | 1:17-cv-01950-CFL | Clampett, et al. | N/A |
| 70 | 1:17-cv-01951-CFL | Anderson, et al. | N/A |
| 71 | 1:17-cv-01952-CFL | Acevedo, et al. | N/A |
| 72 | 1:17-cv-02004-CFL | Anthony, et al. | N/A |
| 73 | 1:17-cv-02028-CFL | Martinez, et al. | N/A |
| 74 | 1:17-cv-02035-CFL | Qiu | N/A |
| 75 | 1:17-cv-02045-CFL | Xu | N/A |
| 76 | 1:17-cv-1652-CFL | Blayney, et al. | N/A |
| 77 | 1:18-cv-00045-CFL | Xi | N/A |
| 78 | 1:18-cv-00065-CFL | Jungkurth, et al. | N/A |
| 79 | 1:18-cv-00114-CFL | Keeton | N/A |
| 80 | 1:18-cv-00163-CFL | Jabr, et al. | N/A |
| 81 | 1:18-cv-00171-CFL | Rivera, et al. | N/A |
| 82 | 1:18-cv-00320-CFL | M&R Meat Market Ltd, et al. | N/A |
| 83 | 1:18-cv-00343-CFL | Saman, et al. | N/A |

| 84 | 1:18-cv-00467-CFL | Fleming, et al. | N/A |
| 85 | 1:18-cv-00570-CFL | Braniff, et al. | N/A |
| 86 | 1:18-cv-00673-CFL | Butler, et al. | N/A |
| 87 | 1:18-cv-00765-CFL | Sandler, et al. | N/A |
| 88 | 1:18-cv-00840-CFL | Fry & Mason Rd Office Building At Cinco Ranch LLC | N/A |
| 89 | 1:18-cv-00851-CFL | 21St Century Centennial Insurance Co., et al. | N/A |
| 90 | 1:18-cv-00854-CFL | Airdrome Holdings, Inc., et al. | N/A |
| 91 | 1:18-cv-00855-CFL | 998 Qin Family I, Llc, et al. | N/A |
| 92 | 1:18-cv-00993-CFL | Barnes, et al. | N/A |
| 93 | 1:18-cv-01023-CFL | Sanchez, et al. | N/A |
| 94 | 1:18-cv-01102-CFL | Liberty Mutual Fire Insurance Company, et al. | N/A |
| 95 | 1:18-cv-01185-CFL | Gomez | N/A |
| 96 | 1:18-cv-01186-CFL | Masterson | N/A |
| 97 | 1:18-cv-01187-CFL | Morales | N/A |
| 98 | 1:18-cv-01188-CFL | Semanko | N/A |
| 99 | 1:18-cv-01189-CFL | Spellings | N/A |
| 100 | 1:18-cv-01213-CFL | Dickerson, et al. | N/A |
| 101 | 1:18-cv-01286-CFL | Garcia, et al. | N/A |
| 102 | 1:18-cv-01289-CFL | Aasgaard, et al. | N/A |
| 103 | 1:18-cv-01330-CFL | Bass, et al. | N/A |
| 104 | 1:18-cv-01940-CFL | Baltazar, et al. | N/A |
| 105 | 1:18-cv-01969-CFL | Kenny, et al. | N/A |
| 106 | 1:19-cv-00037-CFL | Echeverria, et al. | N/A |
| 107 | 1:19-cv-00058-CFL | Siddiqi | N/A |
| 108 | 1:19-cv-00126-CFL | Seaback, et al. | N/A |
| 109 | 1:19-cv-00526-CFL | Hagen | N/A |
| 110 | 1:19-cv-00527-CFL | Menjivar | N/A |
| 111 | 1:19-cv-00528-CFL | Montano, Jr. | N/A |
| 112 | 1:19-cv-00602-CFL | Dulaney | N/A |
| 113 | 1:19-cv-00614-CFL | Maldonado, et al. | N/A |
| 114 | 1:19-cv-00617-CFL | Tovar | N/A |
| 115 | 1:19-cv-00618-CFL | Alvarez, et al. | N/A |
| 116 | 1:19-cv-00619-CFL | Anastasio, et al. | N/A |
| 117 | 1:19-cv-00624-CFL | Alghafir, et al. | N/A |
| 118 | 1:19-cv-00645-CFL | Aguirre, et al. | N/A |
| 119 | 1:19-cv-00646-CFL | Adair, et al. | N/A |
| 120 | 1:19-cv-00656-CFL | Herb | N/A |
| 121 | 1:19-cv-00657-CFL | Powell, et al. | N/A |
| 122 | 1:19-cv-00665-CFL | Coleman | N/A |
| 123 | 1:19-cv-00724-CFL | Howse, et al. | N/A |
| 124 | 1:19-cv-00834-CFL | Hill, Jr. | N/A |
| 125 | 1:19-cv-00864-CFL | Adair, et al. | N/A |

| 126 | 1:19-cv-00865-CFL | Adebo, et al. | N/A |
| 127 | 1:19-cv-01206-CFL | Amica | N/A |
| 128 | 1:19-cv-01209-CFL | Underwriters | N/A |
| 129 | 1:19-cv-01267-CFL | A&K Trucking, et al. | N/A |
| 130 | 1:19-cv-01275-CFL | Neugebauer, et al. | N/A |
| 131 | 1:19-cv-01276-CFL | Virey, et al. | N/A |
| 132 | 1:19-cv-01657-CFL | Archer, et al. | N/A |
| 133 | 1:19-cv-01758-CFL | Abbruscato, et al. | N/A |
| 134 | 1:19-cv-01769-CFL | Alisha Lodging Group, LLC, et al. | N/A |
| 135 | 1:20-cv-00297-CFL | Agnihotri, et al. | N/A |
| 136 | 1:20-cv-00302-CFL | Claycreek Mini Storage, Ltd. | N/A |
| 137 | 1:20-cv-00305-CFL | Aldana, et al. | N/A |
| 138 | 1:20-cv-00306-CFL | Burr, et al. | N/A |
| 139 | 1:20-cv-00386-CFL | Yan | N/A |
| 140 | 1:20-cv-00753-CFL | Salgado | N/A |
| 141 | 1:20-cv-00772-CFL | Max v.USA | N/A |
| 142 | 1:20-cv-00918-CFL | Allgood, et al. | N/A |
| 143 | 1:20-cv-00920-CFL | Adams, et al. | N/A |
| 144 | 1:20-cv-00987-CFL | Cunningham | N/A |
| 145 | 1:20-cv-01223-CFL | Saidian | N/A |
| 146 | 1:20-cv-01403-CFL | Belman | N/A |
| 147 | 1:20-cv-01452-CFL | Griffin, et al. | N/A |
| 148 | 1:20-cv-01524-CFL | Abbey-Barker LLC | N/A |
| 149 | 1:20-cv-01594-CFL | Rosilez, et al. | N/A |
| 150 | 1:20-cv-01634-CFL | Heinold | N/A |
| 151 | 1:21-cv-01051-CFL | Consumers County Mutual, et al. | N/A |
| 152 | 1:21-cv-01180-CFL | Aaqvi | N/A |
| 153 | 1:21-cv-01200-CFL | Da Costa, et al. | N/A |
| 154 | 1:21-cv-01481-CFL | Trexis Insurance Company, et al. | N/A |
| 155 | 1:21-cv-01722-CFL | Amaro v. US, et al. | N/A |
| 156 | 1:21-cv-01723-CFL | Aguilar-Morales, et al. | N/A |
| 157 | 1:21-cv-02314-CFL | Abbott, et al. | N/A |
| 158 | 1:22-cv-00006-CFL | Wilhelm | N/A |
| 159 | 1:22-cv-00138-CFL | Galic, et al. | N/A |
| 160 | 1:22-cv-00342-CFL | Carroll | N/A |
| 161 | 1:22-cv-00383-CFL | Napp | N/A |
| 162 | 1:22-cv-00391-CFL | Gonzalez | N/A |
| 163 | 1:22-cv-00392-CFL | O'Neal | N/A |
| 164 | 1:22-cv-00917-CFL | Abdulla | N/A |
| 165 | 1:22-cv-00920-CFL | Adjei | N/A |
| 166 | 1:22-cv-00921-CFL | Afanou | N/A |
| 167 | 1:22-cv-00923-CFL | Villatoro | N/A |
| 168 | 1:22-cv-00925-CFL | Ahmed | N/A |
| 169 | 1:22-cv-00926-CFL | Akerman | N/A |
| 170 | 1:22-cv-00927-CFL | Christ Apostolic Church | N/A |

| 171 | 1:22-cv-00928-CFL | Sanctuary of Prayer | N/A |
|-----|-------------------|---------------------|-----|
| 172 | 1:22-cv-00931-CFL | Akhtar | N/A |
| 173 | 1:22-cv-00932-CFL | Andujar | N/A |
| 174 | 1:22-cv-00933-CFL | Anfinson | N/A |
| 175 | 1:22-cv-00935-CFL | Arboleda | N/A |
| 176 | 1:22-cv-00936-CFL | Arcos | N/A |
| 177 | 1:22-cv-00939-CFL | Aronson | N/A |
| 178 | 1:22-cv-00940-CFL | Ayesh | N/A |
| 179 | 1:22-cv-00941-CFL | Bankston | N/A |
| 180 | 1:22-cv-00942-CFL | Barreto | N/A |
| 181 | 1:22-cv-00943-CFL | Begum | N/A |
| 182 | 1:22-cv-00944-CFL | Benhar | N/A |
| 183 | 1:22-cv-00945-CFL | Bennetsen | N/A |
| 184 | 1:22-cv-00946-CFL | Benson | N/A |
| 185 | 1:22-cv-00947-CFL | Black | N/A |
| 186 | 1:22-cv-00948-CFL | Boumjahed | N/A |
| 187 | 1:22-cv-00949-CFL | Bradford | N/A |
| 188 | 1:22-cv-00950-CFL | Bradley | N/A |
| 189 | 1:22-cv-00951-CFL | Brown | N/A |
| 190 | 1:22-cv-00952-CFL | Brown | N/A |
| 191 | 1:22-cv-00953-CFL | Brown | N/A |
| 192 | 1:22-cv-00954-CFL | Burroughs | N/A |
| 193 | 1:22-cv-00955-CFL | Byington | N/A |
| 194 | 1:22-cv-00956-CFL | Davego Xtreme Clothes | N/A |
| 195 | 1:22-cv-00958-CFL | Cadwallader | N/A |
| 196 | 1:22-cv-00959-CFL | Cagliano | N/A |
| 197 | 1:22-cv-00960-CFL | Capstone Luxury Rentals | N/A |
| 198 | 1:22-cv-00961-CFL | Jones | N/A |
| 199 | 1:22-cv-00962-CFL | Chambers | N/A |
| 200 | 1:22-cv-00963-CFL | Cho | N/A |
| 201 | 1:22-cv-00964-CFL | Clemmons | N/A |
| 202 | 1:22-cv-00965-CFL | Copening | N/A |
| 203 | 1:22-cv-00966-CFL | Coyer | N/A |
| 204 | 1:22-cv-00967-CFL | Craymer | N/A |
| 205 | 1:22-cv-00968-CFL | Cruz-Cotton | N/A |
| 206 | 1:22-cv-00969-CFL | Cruz | N/A |
| 207 | 1:22-cv-00970-CFL | Cubillos | N/A |
| 208 | 1:22-cv-00971-CFL | Cuevas | N/A |
| 209 | 1:22-cv-00972-CFL | Flor de Cuba TX Inc | N/A |
| 210 | 1:22-cv-00973-CFL | Lee's Donuts | N/A |
| 211 | 1:22-cv-00974-CFL | Viajes Latinos | N/A |
| 212 | 1:22-cv-00975-CFL | Dalton | N/A |
| 213 | 1:22-cv-00977-CFL | Danaher | N/A |
| 214 | 1:22-cv-00978-CFL | Dangtran | N/A |

| 215 | 1:22-cv-00979-CFL | Davis | N/A |
|-----|-------------------|-------|-----|
| 216 | 1:22-cv-00980-CFL | De La Cruz-Ortiz | N/A |
| 217 | 1:22-cv-00982-CFL | De Quesada | N/A |
| 218 | 1:22-cv-00983-CFL | Del Carmen Hazelwood | N/A |
| 219 | 1:22-cv-00984-CFL | Delany | N/A |
| 220 | 1:22-cv-00985-CFL | Diaz | N/A |
| 221 | 1:22-cv-00987-CFL | Dziadek | N/A |
| 222 | 1:22-cv-00990-CFL | Dziadek | N/A |
| 223 | 1:22-cv-00991-CFL | Elmasri | N/A |
| 224 | 1:22-cv-00992-CFL | Estrada | N/A |
| 225 | 1:22-cv-00993-CFL | Havana-Caribe | N/A |
| 226 | 1:22-cv-00996-CFL | Flores | N/A |
| 227 | 1:22-cv-00997-CFL | Flores | N/A |
| 228 | 1:22-cv-00998-CFL | Fulgham | N/A |
| 229 | 1:22-cv-00999-CFL | Gamble | N/A |
| 230 | 1:22-cv-01000-CFL | Gannon | N/A |
| 231 | 1:22-cv-01001-CFL | Garcia | N/A |
| 232 | 1:22-cv-01002-CFL | Gardezi | N/A |
| 233 | 1:22-cv-01003-CFL | Garza | N/A |
| 234 | 1:22-cv-01004-CFL | Garza | N/A |
| 235 | 1:22-cv-01005-CFL | Garza | N/A |
| 236 | 1:22-cv-01006-CFL | Gbordzoe | N/A |
| 237 | 1:22-cv-01007-CFL | Georgas | N/A |
| 238 | 1:22-cv-01008-CFL | Ghosh | N/A |
| 239 | 1:22-cv-01009-CFL | Gooden | N/A |
| 240 | 1:22-cv-01010-CFL | Graham | N/A |
| 241 | 1:22-cv-01019-CFL | Grayson | N/A |
| 242 | 1:22-cv-01020-CFL | Grissin | N/A |
| 243 | 1:22-cv-01021-CFL | Grundy | N/A |
| 244 | 1:22-cv-01023-CFL | Gutierrez | N/A |
| 245 | 1:22-cv-01024-CFL | Hamling | N/A |
| 246 | 1:22-cv-01026-CFL | Hammersley | N/A |
| 247 | 1:22-cv-01027-CFL | Handy | N/A |
| 248 | 1:22-cv-01028-CFL | Henderson | N/A |
| 249 | 1:22-cv-01029-CFL | Hernandez | N/A |
| 250 | 1:22-cv-01030-CFL | Holman | N/A |
| 251 | 1:22-cv-01039-CFL | Hossain | N/A |
| 252 | 1:22-cv-01040-CFL | Huerta | N/A |
| 253 | 1:22-cv-01041-CFL | Jackson | N/A |
| 254 | 1:22-cv-01042-CFL | Jallah | N/A |
| 255 | 1:22-cv-01043-CFL | Jocz | N/A |
| 256 | 1:22-cv-01044-CFL | Jones | N/A |
| 257 | 1:22-cv-01045-CFL | Jones | N/A |
| 258 | 1:22-cv-01046-CFL | Jones | N/A |

| 259 | 1:22-cv-01047-CFL | Kamara | N/A |
|-----|-------------------|--------|-----|
| 260 | 1:22-cv-01049-CFL | Kerby | N/A |
| 261 | 1:22-cv-01051-CFL | Khan | N/A |
| 262 | 1:22-cv-01053-CFL | Lakhany | N/A |
| 263 | 1:22-cv-01054-CFL | Larrivee | N/A |
| 264 | 1:22-cv-01055-CFL | Leone | N/A |
| 265 | 1:22-cv-01056-CFL | Leroy Carter | N/A |
| 266 | 1:22-cv-01066-CFL | Lester | N/A |
| 267 | 1:22-cv-01067-CFL | Leuschen | N/A |
| 268 | 1:22-cv-01068-CFL | Loera | N/A |
| 269 | 1:22-cv-01069-CFL | Lopez | N/A |
| 270 | 1:22-cv-01070-CFL | Lopez | N/A |
| 271 | 1:22-cv-01071-CFL | Lu | N/A |
| 272 | 1:22-cv-01072-CFL | Luman | N/A |
| 273 | 1:22-cv-01073-CFL | Lyon | N/A |
| 274 | 1:22-cv-01074-CFL | Mahajan | N/A |
| 275 | 1:22-cv-01075-CFL | Marnitz | N/A |
| 276 | 1:22-cv-01076-CFL | Martin | N/A |
| 277 | 1:22-cv-01077-CFL | Massey | N/A |
| 278 | 1:22-cv-01078-CFL | Maynard | N/A |
| 279 | 1:22-cv-01079-CFL | McCreary | N/A |
| 280 | 1:22-cv-01080-CFL | Medrano | N/A |
| 281 | 1:22-cv-01081-CFL | Melendez | N/A |
| 282 | 1:22-cv-01082-CFL | Miller | N/A |
| 283 | 1:22-cv-01083-CFL | Milton | N/A |
| 284 | 1:22-cv-01084-CFL | Mingledorff | N/A |
| 285 | 1:22-cv-01085-CFL | Mitchell | N/A |
| 286 | 1:22-cv-01086-CFL | Mitchell | N/A |
| 287 | 1:22-cv-01087-CFL | Mondragon | N/A |
| 288 | 1:22-cv-01088-CFL | Mondragon | N/A |
| 289 | 1:22-cv-01089-CFL | Moodley | N/A |
| 290 | 1:22-cv-01090-CFL | Morgan | N/A |
| 291 | 1:22-cv-01091-CFL | Postal Plus Copy Center | N/A |
| 292 | 1:22-cv-01100-CFL | Mosquera | N/A |
| 293 | 1:22-cv-01101-CFL | Moss | N/A |
| 294 | 1:22-cv-01102-CFL | Munoz | N/A |
| 295 | 1:22-cv-01103-CFL | Navissi | N/A |
| 296 | 1:22-cv-01104-CFL | Ndole | N/A |
| 297 | 1:22-cv-01105-CFL | Nesbitt | N/A |
| 298 | 1:22-cv-01106-CFL | Nguyen | N/A |
| 299 | 1:22-cv-01107-CFL | O'Bannon | N/A |
| 300 | 1:22-cv-01108-CFL | O'Brando | N/A |
| 301 | 1:22-cv-01109-CFL | Odusoga | N/A |
| 302 | 1:22-cv-01110-CFL | Ogadi | N/A |

| 303 | 1:22-cv-01111-CFL | Olateru-Olagbegi | N/A |
| 304 | 1:22-cv-01112-CFL | Onaghise | N/A |
| 305 | 1:22-cv-01113-CFL | O'Neill | N/A |
| 306 | 1:22-cv-01114-CFL | Onwas | N/A |
| 307 | 1:22-cv-01115-CFL | Orick | N/A |
| 308 | 1:22-cv-01116-CFL | Ormeno | N/A |
| 309 | 1:22-cv-01137-CFL | O'Shaughnessy | N/A |
| 310 | 1:22-cv-01138-CFL | Palmer | N/A |
| 311 | 1:22-cv-01139-CFL | Palmer | N/A |
| 312 | 1:22-cv-01140-CFL | Palmerton | N/A |
| 313 | 1:22-cv-01141-CFL | Parker | N/A |
| 314 | 1:22-cv-01142-CFL | Parks | N/A |
| 315 | 1:22-cv-01143-CFL | Parson | N/A |
| 316 | 1:22-cv-01144-CFL | Pavel | N/A |
| 317 | 1:22-cv-01145-CFL | Peavy | N/A |
| 318 | 1:22-cv-01146-CFL | Pegoda | N/A |
| 319 | 1:22-cv-01147-CFL | Perez | N/A |
| 320 | 1:22-cv-01154-CFL | Pfeiffer | N/A |
| 321 | 1:22-cv-01155-CFL | Romo | N/A |
| 322 | 1:22-cv-01156-CFL | Portillo | N/A |
| 323 | 1:22-cv-01157-CFL | Ramirez | N/A |
| 324 | 1:22-cv-01158-CFL | Ramos | N/A |
| 325 | 1:22-cv-01159-CFL | Reyes | N/A |
| 326 | 1:22-cv-01160-CFL | Richards-Lewis | N/A |
| 327 | 1:22-cv-01161-CFL | Rienstra | N/A |
| 328 | 1:22-cv-01162-CFL | Riesmeyer | N/A |
| 329 | 1:22-cv-01163-CFL | Rivera | N/A |
| 330 | 1:22-cv-01164-CFL | Rivera | N/A |
| 331 | 1:22-cv-01165-CFL | Robertson | N/A |
| 332 | 1:22-cv-01166-CFL | Rodriguez | N/A |
| 333 | 1:22-cv-01168-CFL | Ruiz | N/A |
| 334 | 1:22-cv-01169-CFL | Sabat | N/A |
| 335 | 1:22-cv-01170-CFL | Sadler | N/A |
| 336 | 1:22-cv-01171-CFL | Saenz | N/A |
| 337 | 1:22-cv-01175-CFL | Bella Skin Spa | N/A |
| 338 | 1:22-cv-01176-CFL | Sanchez | N/A |
| 339 | 1:22-cv-01177-CFL | Sauceda | N/A |
| 340 | 1:22-cv-01178-CFL | Secor | N/A |
| 341 | 1:22-cv-01179-CFL | Schroedle | N/A |
| 342 | 1:22-cv-01180-CFL | Scott | N/A |
| 343 | 1:22-cv-01181-CFL | Scroggs | N/A |
| 344 | 1:22-cv-01182-CFL | Shah | N/A |
| 345 | 1:22-cv-01183-CFL | Sharp | N/A |
| 346 | 1:22-cv-01186-CFL | Shaw | N/A |

| 347 | 1:22-cv-01187-CFL | Shaw | N/A |
| 348 | 1:22-cv-01188-CFL | ShoyKet | N/A |
| 349 | 1:22-cv-01189-CFL | Siddiqi | N/A |
| 350 | 1:22-cv-01190-CFL | Silva | N/A |
| 351 | 1:22-cv-01191-CFL | Simpson | N/A |
| 352 | 1:22-cv-01192-CFL | Smith | N/A |
| 353 | 1:22-cv-01193-CFL | Sparkman | N/A |
| 354 | 1:22-cv-01195-CFL | Sparks | N/A |
| 355 | 1:22-cv-01196-CFL | Stagg | N/A |
| 356 | 1:22-cv-01197-CFL | Stevens | N/A |
| 357 | 1:22-cv-01198-CFL | Stumm | N/A |
| 358 | 1:22-cv-01199-CFL | Suh | N/A |
| 359 | 1:22-cv-01200-CFL | Tata | N/A |
| 360 | 1:22-cv-01202-CFL | Taylor | N/A |
| 361 | 1:22-cv-01203-CFL | Tennyson | N/A |
| 362 | 1:22-cv-01204-CFL | Thomas | N/A |
| 363 | 1:22-cv-01205-CFL | Tishkova | N/A |
| 364 | 1:22-cv-01225-CFL | Tooley | N/A |
| 365 | 1:22-cv-01226-CFL | Trevino | N/A |
| 366 | 1:22-cv-01227-CFL | Truch | N/A |
| 367 | 1:22-cv-01228-CFL | Tupas | N/A |
| 368 | 1:22-cv-01231-CFL | Umanah | N/A |
| 369 | 1:22-cv-01232-CFL | Gascon | N/A |
| 370 | 1:22-cv-01233-CFL | Varsamis | N/A |
| 371 | 1:22-cv-01234-CFL | Villegas | N/A |
| 372 | 1:22-cv-01235-CFL | Villegas | N/A |
| 373 | 1:22-cv-01236-CFL | Vitullo | N/A |
| 374 | 1:22-cv-01237-CFL | Vu | N/A |
| 375 | 1:22-cv-01238-CFL | Vyssotski | N/A |
| 376 | 1:22-cv-01239-CFL | Walker | N/A |
| 377 | 1:22-cv-01240-CFL | Watson | N/A |
| 378 | 1:22-cv-01241-CFL | Wells | N/A |
| 379 | 1:22-cv-01242-CFL | White | N/A |
| 380 | 1:22-cv-01243-CFL | Whitfield | N/A |
| 381 | 1:22-cv-01244-CFL | Woheidy | N/A |
| 382 | 1:22-cv-01245-CFL | Yow | N/A |
| 383 | 1:22-cv-01246-CFL | Cinco Ranch Nails Design | N/A |
| 384 | 1:22-cv-01247-CFL | JD Items | N/A |
| 385 | 1:22-cv-01693-CFL | Beviamo International LLC | N/A |
| 386 | 1:22-cv-01694-CFL | Autrey | N/A |
| 387 | 1:22-cv-01761-CFL | Clodine II Investors LLC, et al. | N/A |
| 388 | 1:22-cv-01816-CFL | Woodard | N/A |
| 389 | 1:22-cv-01817-CFL | Hunek | N/A |
| 390 | 1:22-cv-01839-CFL | Avina | N/A |

| 391 | 1:22-cv-01840-CFL | Kim | N/A |
|-----|-------------------|-----|-----|
| 392 | 1:22-cv-01841-CFL | Sahara Group LP | N/A |
| 393 | 1:22-cv-01842-CFL | Barnes | N/A |
| 394 | 1:22-cv-01843-CFL | Carey | N/A |
| 395 | 1:22-cv-01844-CFL | Mitchell | N/A |
| 396 | 1:22-cv-01845-CFL | Fassetta | N/A |
| 397 | 1:22-cv-01846-CFL | Gonzalez | N/A |
| 398 | 1:22-cv-01847-CFL | Rubio | N/A |
| 399 | 1:22-cv-01848-CFL | Smith | N/A |
| 400 | 1:22-cv-01849-CFL | Stahlhut | N/A |
| 401 | 1:22-cv-01850-CFL | Stahlhut | N/A |
| 402 | 1:22-cv-01851-CFL | Stahlhut | N/A |
| 403 | 1:22-cv-01868-CFL | Gloria | N/A |
| 404 | 1:22-cv-01869-CFL | Sanchez | N/A |
| 405 | 1:23-cv-00011-CFL | Guajardo | N/A |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

Statement of Related Cases Under Fed. Cir. R. 47.5..................................1

I.    Statement of the Issues ...........................................................3

II.   Statement of the Case .............................................................5

III.  Summary of Argument ..............................................................9

    A.    The Trial Court Correctly Held the Government Liable for
    the Physical Taking of a Permanent Flowage Easement ......................9

    B.    The Government's Police Power and Flood Control Act
    Arguments Were Rejected in this Court's *Milton v.*
    *United States* Decision ..................................................14

    C.    The Trial Court Correctly Awarded Just Compensation for
    the Taking of Banker/Burnhams' Property Rights ...........................15

IV.   Argument .........................................................................17

    A.    Standard of Review .................................................17

    B.    The Trial Court Correctly Held That the Government's
    Actions Constitute a Physical Taking of a Permanent
    Flowage Easement..........................................................18

        1.    The Government's Intended Use and Operation of
        Addicks and Barker Is the But-For Cause of the
        Flooding, Not a Mere Trespass.........................................20

            a.    Harvey Was Not a Mere Trespass ..................................21

            b.    Harvey Was Not an Isolated, Unprecedented
            Storm............................................................21

            c.    The Flooding of Banker/Burnham's Properties
            Was the Direct, Natural, and Probable Result
            of the Corps' Construction and Operation of
            the Dams .........................................................23

          d.     The Corps' Design and Construction of the Dams Resulted in the Conscious Flooding of the Banker/Burnham Properties ...................................26

    2.     The Corps' Actions Always Benefitted the Houston Areas, Never Upstream Properties............................................31

    3.     Future Flooding Is Inevitable...................................................32

    4.     This Case Is Based on the Corps' Actions, Not Its Failure to Act .................................................................34

    5.     The Government's Good Intentions Do Not Shield It From Takings Liability .............................................................35

    6.     Harvey Did Not Break the Chain of But-for Causation ..........36

    7.     The Trial Court Correctly Determined that Banker/ Burnham's Investment-Backed Expectations Were Reasonable ...............................................................................41

C.    Plaintiffs' Property Rights Were Not Limited by the Police Power or the 1928 Flood Control Act .................................................46

    1.     The Government's Exercise of "Police Powers" Did Not Limit Plaintiffs' Property Right to Be Free From This Government-Caused Invasion By Flooding .....................47

    2.     The Government Cites No Flooding Cases in Support of Its Police Power Argument....................................................50

    3.     The Government Fails to Address the Destruction of Banker/Burnham's Right to Exclude Flood Waters From Their Properties ..............................................................52

    4.     The Government Fails to Identify Any Clearly Erroneous Factual Finding By the Trial Court, Which Rejected its Necessity Defense ......................................56

    5.     The 1928 Flood Control Act Did Not Repeal Banker/Burnham's Fifth Amendment Right to Just Compensation ..................................................................59

D.    The Damages Awards to Bankers and Burnham Were Just Compensation, Not Consequential Damages..............................61

a.  Banker/Burnham's Personal Property Is Compensable as a Property Interest Separate from the Flowage Easement ....................................................................63

b.  The Cost to Cure Structural Damage Is a Proper Measure of Just Compensation ..................................................64

c.  Lost Use Value Is a Proper Component of Fifth Amendment Just Compensation......................................66

Conclusion ...............................................................................................67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Pelagic Fishing Co., L.P. v. United States,*
379 F.3d 1363 (Fed. Cir. 2004) ...........................................................................18

*Arkansas Game & Fish Comm'n. v. United States,*
568 U.S. 23 (2012) ......................................................................... *passim*

*Arkansas Game & Fish Comm'n. v. United States,*
736 F.3d 1364 (Fed. Cir. 2013) ....................................... 40, 41, 51, 62

*Armstrong v. United States,*
364 U.S. 40 (1960) ...........................................................................36

*Banks v. United States,*
721 F. App'x 928 (Fed. Cir. 2017) ....................................... 61, 62, 65

*Barnes v. Glen Theatre, Inc.,*
501 U.S. 560 (1991) .........................................................................47

*Bartz v. United States,*
633 F.2d 571 (Ct. Cl. 1980) ............................................................39

*Bass Enterprises Prod. Co. v. United States,*
133 F.3d 893 (Fed. Cir. 1998) ........................................................17

*Bd. Of Supervisors of Issaquena Cnty., Mississippi v. United States,*
No. 2022-2026, 2023 WL 4985729 (Fed. Cir. Aug. 4, 2023)...................... 38, 51

*California v. United States,*
271 F.3d 1377 (Fed. Cir. 2001) ......................................................60

*Cedar Point Nursery v. Hassid,*
141 S. Ct. 2063 (2021) ....................................................... 19, 21, 50

*Central Green Co. v. United States,*
531 U.S. 425 (2001) .........................................................................59

*Cienega Gardens v. United States,*
331 F.3d 1319 (Fed. Cir. 2003) ......................................................43

iv

*Columbia Basin Orchard v. United States*,
    132 F. Supp. 707 (Ct. Cl. 1955) ................................................................. 26, 40

*Cooley v. United States*,
    324 F.3d 1297 (Fed. Cir. 2003) .............................................................17

*Cotton Land Co. v. United States*,
    75 F. Supp. 232 (Ct. Cl. 1948) .............................................................. 50, 51

*Dairyland Power Co-op. v. United States*,
    645 F.3d 1363 (Fed. Cir. 2011) .............................................................18

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991)...............................................................................48

*Hendler v. United States*,
    175 F.3d 1374 (Fed. Cir. 1999) ......................................................... 17, 18

*Hendler v. United States*,
    952 F.2d 1364 (Fed. Cir. 1991) .............................................................53

*Horne v. Dep't of Agric.*,
    576 U.S. 350 (2015)....................................................................... 5, 41, 63

*Ideker Farms, Inc. v. United States*,
    71 F.4th 964 (Fed. Cir. 2023).......................................................... *passim*

*In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*,
    799 F.2d 317 (7th Cir. 1986) ................................................................39

*In re Downstream Addicks & Barker Reservoirs*,
    No. 1:17-cv-9002 (Fed. Cl.).....................................................................1

*In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*,
    138 Fed. Cl. 658 (2018) ................................................................. 34, 57

*Jacobs v. United States*,
    290 U.S. 13 (1933)........................................................................... 5, 35

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)....................................................................... 41, 52

*Lucas v. South Carolina Coastal Council*,
    505 U.S. 1003 (1992) ..................................................................... 14, 52

v

*Milton v. United States*,
   No. 21-1131 (June 2, 2022), 36 F.4th 1154 (Fed. Cir. 2022) ...................... *passim*

*Mugler v. Kansas*,
   123 U.S. 623 (1887) ........................................................................49

*National Mfg. Co. v. United States*,
   210 F.2d 263 (1954) .......................................................................59

*Olson v. United States*,
   292 U.S. 246 (1934) ........................................................................61

*Otay Mesa Prop., L.P. v. United States*,
   670 F.3d 1358 (Fed. Cir. 2012) ......................................................64

*Pakdel v. City and County of San Francisco, California*,
   141 S. Ct. 2226 (2021) ....................................................................49

*Palazzolo v. Rhode Island*,
   533 U.S. 606 (2001) ........................................................................50

*Penn Cent. Transp. Co. v. City of New York*,
   438 U.S. 104 (1978) ........................................................................49

*Pennsylvania Coal Co. v. Mahon*,
   260 U.S. 393 (1922) ...................................................................48, 49

*Portsmouth Harbor Land & Hotel Co. v. United States*,
   260 U.S. 327 (1922) ........................................................................21

*Precision Pine & Timber, Inc. v. United States*,
   596 F.3d 817 (Fed. Cir. 2010) ........................................................62

*Preminger v. Sec'y of Veterans Affs.*,
   517 F.3d 1299 (Fed. Cir. 2008) ......................................................47

*Pumpelly v. Green Bay Company*,
   80 U.S. 166 (1871) ..........................................................................50

*Quebedeaux v. United States*,
   112 Fed. Cl. 317 (2013) ..................................................................11

*Ridge Line, Inc. v. United States*,
   346 F.3d 1346 (Fed. Cir. 2003) ...........................................11, 20, 51

*Sanguinetti v. United States*,
    264 U.S. 146 (1924)................................................................39

*Scranton v. Wheeler*,
    179 U.S. 141 (1900)........................................................ 15, 60

*Seaboard Lumber Co. v. United States*,
    308 F.3d 1283 (Fed. Cir. 2002)..............................................58

*St. Bernard Par. Gov't v. United States*,
    887 F.3d 1354 (Fed. Cir. 2018) ............................... 34, 35, 38

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002)................................................................49

*TrinCo Inv. Co. v. United States*,
    722 F.3d 1375 (Fed. Cir. 2013) ............................... 56, 57, 58

*United States v. Caltex*,
    344 U.S. 149 (1952)................................................................57

*United States v. Cress*,
    243 U.S. 316 (1917)........................................................ 40, 51

*United States v. Dickinson*,
    331 U.S. 745 (1947)................................................................40

*United States v. Gen. Motors Corp.*,
    323 U.S. 373 (1945)................................................................63

*United States v. James*,
    478 U.S. 597 (1986)................................................................59

*United States v. Lopez*,
    514 U.S. 549 (1995)........................................................ 47, 48

*United States v. Morrison*,
    529 U.S. 598 (2000)........................................................ 47, 48

*United States v. Reynolds*,
    397 U.S. 14 (1970).......................................................... 17, 66

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948)................................................................18

*Vaizburd v. United States*,
　384 F.3d 1278 (Fed. Cir. 2004) ............................................................ 40, 62, 64

*Wilfong v. United States*,
　480 F.2d 1326 (Ct. Cl. 1973) ....................................................................39

## Statutes and Other Authorities:

U.S. Const., amend. V ........................................................................ *passim*

33 U.S.C. § 702(c) ............................................................... 4, 15, 47, 59

Fed. Cir. R. 47.5 .........................................................................................1

**Statement of Related Cases Under Fed. Cir. R. 47.5**

Counsel believes there are no other related cases, as defined by Fed. Cir. R. 47.5, other than *Milton v. United States*, No. 21-1131 (June 2, 2022), 36 F.4th 1154 (Fed. Cir. 2022) (Decided By Hons. Lourie, Chen, Cunningham).

Two cases pending before the United States Court of Federal Claims could be directly affected by this Court's decision in this consolidated appeal: (1) *In re Upstream Addicks & Barker Reservoirs*, No. 1:17-cv-01277-CFL, 1:17-cv-09001-CFL, 1:17-mc-3000-L, which is the master docket for claims of non-bellwether plaintiffs in the same set of cases as this appeal, and (2) *In re Downstream Addicks & Barker Reservoirs*, No. 1:17-cv-9002 (Fed. Cl.), which is the docket for claims related to the taking of private property located downstream from the Addicks and Barker dams.

This case involves the Government's unconstitutional physical appropriation of permanent flowage easements resulting from the U.S. Army Corps of Engineers' intentional flooding of upstream residential properties owned by Plaintiffs-Appellees, Christina Banker, Todd Banker, and Elizabeth Burnham (collectively "Banker/Burnham") in 2017. The Corps designed, constructed, and operated the Addicks and Barker dams to hold back, control, and impound rainfall runoff in the dams' two reservoirs from the nearly 400 square miles of watershed to protect downtown Houston, Texas. The dams provide no flood control benefit for Banker/Burnham.

The trial court correctly determined that Tropical Storm Harvey's rainfall was not the cause of the Plaintiffs' flooding because, but for the Corps' intended use and operation of the dams, Banker/Burnham's properties would not have flooded during the Harvey event. That is because the Corps decided, decades before Harvey, to adopt a protocol that imposed "flooding on private lands without benefit of flowage easement or other legal right."[1] Under that policy, the Corps' Water Control Manual states that normal flood control protocols include using all available reservoir storage to protect Houston, which includes private land that the Government does not own within the design footprint of the reservoir.[2]

---

[1] Appx10; Appx36.
[2] Appx16.

Defendant-Appellant, the United States, appeals the liability and damages rulings in Banker/Burnham's favor. Because the Government cannot identify any error in the trial court's sound legal reasoning and no clear error in its extensive findings of fact, Banker/Burnham ask this Court to affirm the trial court's judgment.

## I.     Statement of the Issues

Banker/Burnham's residential properties are within the Barker and Addicks reservoirs footprints, located upstream of the Addicks and Barker Dams.[3] The U.S. Army Corps of Engineers designed, constructed, modified, and operated these dams solely to provide flood protection downstream in the Houston area.[4] But for the Government's design, construction, modification, and operation of the Addicks and Barker Dams, the Banker/Burnham properties would not have been inundated with severe flooding in 2017 and would not be subject to future flooding.[5] The trial court also found that the Corps knew that storms producing pools exceeding government-owned land were "likely to occur"[6] and "probable."[7]

---

[3] Appx47.

[4] *See* Appx5; *see also* Appx8790; Appx8803.

[5] *See* Appx37 (noting that the Government "essentially conceded that without the dams [the Banker property] would not have flooded"); Appx36-39.

[6] *See* Appx8; Appx31; Appx40-41.

[7]*See also* Appx10; Appx17; Appx36-37; Appx40.

1.      The Government argues that tropical storm Harvey caused the flooding of Banker/Burnham's properties, not the Corps. The trial court rejected this, finding that the Government had consciously induced upstream flooding, foreseeably and severely damaging Banker/Burnham's residences.[8] Did the trial court err in finding the Government liable for the physical taking of a permanent flowage easement on Banker/Burnham's properties?

2.      The Government argues that it is shielded from taking liability because the Corps exercised its emergency police power during Harvey. But the trial court found that the Corps' actions in 2017 did not constitute emergency decision-making but were the result of plans in place "for years"[9] whereby the Corps would, during a large storm, "impound floodwaters onto plaintiffs' properties."[10] Did the trial court correctly hold that the Government's actions in 2017 were not shielded by the emergency police powers defense?

3.      The Government argues that the 1928 Flood Control Act[11] is a pre-existing limitation on Banker/Burnham's property rights. But this Court rejected the same Government argument in *Milton v. United States*.[12] Did the trial court

---

[8] *See* Appx34.
[9] *See* Appx45.
[10] Appx45.
[11] 33 U.S.C. § 702(c).
[12] *See Milton v. United States*, 36 F.4th 1154 (Fed. Cir. 2022).

4

correctly hold that the Flood Control Act did not shield the Government from takings liability?

4.    The remedy for an unconstitutional taking is "just compensation, not inadequate compensation."[13] The Fifth Amendment protects private property "without any distinction between different types."[14] The Government challenges the court's award of damages for Banker/Burnham's personal property and related property losses caused by the Corps' taking of a flowage easement in 2017. Did the trial court properly determine just compensation for Banker/Burnham?

## II.    Statement of the Case

The decisions and actions that give rise to this physical taking case trace back decades. "[I]n response to a series of serious storms in the first half of the twentieth century, the United States Army Corps of Engineers designed and built the Addicks and Barker Dams."[15] The sole purpose of the dams was "to impound rainwater upstream"[16] and to prevent flooding downstream "in and around downtown Houston."[17]

---

[13] *Jacobs v. United States*, 290 U.S. 13, 16 (1933).
[14] *Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015).
[15] Appx48; *see* Appx9090-9094; Appx8254.
[16] Appx48; *see* Appx9090-9094.
[17] Appx48.

"Factual circumstances were critical to the [trial] court's liability determination."[18] The Corps repeatedly "chose not to purchase enough property to accommodate the storage capacity of the dams' design."[19] Despite many studies the Corps had conducted over the years, including studies as recent as 2003,[20] and modifications made by the Corps to strengthen the embankments to address dam safety issues,[21] the Corps repeatedly made cost-benefit decisions predicated on submerging the upstream properties to protect downtown Houston and its Port.[22] The Corps repeatedly reasoned that flooding upstream properties during large storms, which occur on the average of every 10–12 years in the region, was cheaper because paying damages to upstream landowners, when storm rainfall exceeded government-owned land, cost less than buying the privately owned land or a flowage easement on private land.[23]

In the late 1970s, scientific enhancements allowed the Corps to conduct an updated study of the dams and reservoirs, which included "a higher probable maximum precipitation value."[24] The findings further "raised concerns with the

---

[18] Appx48.
[19] Appx49; Appx9.
[20] Appx13; Appx37.
[21] Appx8885-8889.
[22] Appx8885-8889.
[23] *See* Appx12-13; Appx49; Appx9.
[24] Appx11.

Corps that flooding beyond the extent of government-owned land was highly probable, if not inevitable, during a severe storm."[25]

In 2017, the Corps' "calculus reached"[26] its inevitable conclusion. During Harvey, "the Corps operated the Addicks and Barker Dams according to the design criteria"[27] and followed the Corps' "official operating procedures for the dams."[28] Under the Corps' operating procedures, the Corps operated the dam gates "in a controlled manner to prevent flooding downstream"[29]—"even when such operation would flood upstream private property beyond the government-owned land."[30]

The 2017 Corps-induced flooding substantially damaged the Banker/Burnham's homes. The Government's physical taking displaced these Plaintiffs, who lost the ability to occupy their homes.[31] The Bankers "experienced 1.1 feet of flooding that remained in the home for four days."[32] Four to five feet of the impounded flood water comprising the Addicks reservoir pool was in

---

[25] Appx10; Appx17; Appx31; Appx36-37; Appx40-41.
[26] Appx40.
[27] Appx49.
[28] Appx49.
[29] Appx49.
[30] Appx49.
[31] Appx19-20; Appx66.
[32] Appx19; Appx49.

Burnham's home for at least seven days.[33] The Burnham home was uninhabitable for a period of months, after which, Burnham sold her home "as is."[34]

The trial court's factual findings include the undisputed fact that neither the Bankers nor Burnham knew that their property was situated in a reservoir or that their properties faced the risk of Corps-induced reservoir flooding.[35] The trial court also found that the Addicks/Barker facility was the but-for cause of the flooding on the Banker/Burnham properties.

Following the significant flooding on their properties, Banker/Burnham, along with others, sued for a physical taking in the U.S. Court of Federal Claims. Thirteen bellwether Plaintiffs, including Banker/Burnham, were identified for the liability trial, and six of those (including Banker/Burnham) were chosen for the bifurcated damages trial. Following a 10-day trial in May 2019, the trial court held that the Government was liable for the permanent, physical taking of a flowage easement on the Banker/Burnham's properties, which the Government challenges in this appeal. In addition, the Government challenged the trial court's award of just compensation to Banker/Burnham for taking their personal property and for structural restoration costs resulting from the physical appropriation.

---

[33] Appx19; Appx49; Appx6207.
[34] Appx19-20; Appx6209.
[35] Appx42-43; Appx6196; Appx6203-6204; Appx6067; Appx6050; Appx6198.

8

## III.    Summary of Argument

The Government raises several arguments for why the trial court's liability determination and damages award should be reversed. All are paper thin. The Government retreads the same legal theories that this and other courts have rejected. The Government's arguments are factually unsupported, contrary to the trial court's factual findings—which are not clearly erroneous—contrary to the Government's stipulations and admissions in the trial court, and binding case law.

### A.    The Trial Court Correctly Held the Government Liable for the Physical Taking of a Permanent Flowage Easement

Despite the trial court's factual finding that Banker/Burnham's flooding would not have occurred but for the Government's actions,[36] the Government continues to argue that the flooding of the upstream properties was caused by unprecedented rainfall from Tropical Storm Harvey. Not so. The trial court correctly held that the Government was liable for physically taking a permanent flowage easement on Banker/Burnham's properties. This holding was based directly on the trial court's finding that Harvey was not unprecedented; before Harvey, there had been many large storms in the region, and they are likely to recur.[37]

---

[36] Appx35-39.
[37] Appx8; Appx31; Appx35-36.

The trial court concluded that the flooding was not only the direct, natural, and probable or foreseeable result of the Corps' actions but the *intended* result of the Corps' design, construction, and operation of the dams, the sole purpose of which was to protect the Houston area from flooding.[38] The Government offers no reason this Court should conclude that these findings were clearly erroneous and its liability determination was wrong as a matter of law.

After "considering the totality of the evidence," the trial court found that plaintiffs met their burden of showing causation for all test properties because "Plaintiffs have sufficiently demonstrated that the inundation of floodwaters onto their private property was the 'direct, natural, or probable result' of the Government's activity."[39]

The trial court's liability decision was issued before this Court's ruling in *Ideker Farms*,[40] which held that the permanent, physical taking of a flowage easement is analyzed as a per se taking.[41] Without the benefit of that ruling, the trial court applied the taking analysis in *Arkansas Game & Fish*,[42] a case that involved the temporary taking of a flowage easement for determining whether a

---

[38] *See* Appx39-41.
[39] Appx37-39.
[40] *See Ideker Farms, Inc. v. United States*, 71 F.4th 964, 980 (Fed. Cir. 2023).
[41] *Id.* at 980.
[42] *See Arkansas Game & Fish Comm'n. v. United States*, 568 U.S. 23 (2012).

10

taking or a trespass had occurred. Under that test, the Court looks to whether the flooding is the "direct, natural, or probable result of an authorized activity[,]"[43] and considers the "[s]everity of the interference"[44] or "whether the government's actions were sufficiently substantial to justify a takings remedy."[45] Regardless of whether the taking here is analyzed as a per se, physical taking or under the multi-factor *Arkansas Game & Fish*[46] test, the trial court correctly held the Government liable for physically taking a permanent flowage easement on Banker/Burnham's properties.

The trial court also rejected the Government's argument that Harvey was a singular event, and any claims resulting from Harvey sound in tort. The trial court found just the opposite, and further noted that where, as here, the Government reserves the right to flood the property, even a single, intentional flooding can "give rise to a taking."[47]

The Government's argument that the Corps could not have prevented the upstream flooding "carries no water."[48] The trial court found that the Corps designed and constructed the dams, knowing "from the outset that the land it

---

[43] *See Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003).

[44] *Arkansas Game & Fish*, 568 U.S. at 39.

[45] *Ridge Line, Inc.*, 346 F.3d at 1355.

[46] *Arkansas Game & Fish*, 568 U.S. 23.

[47] *Quebedeaux v. United States*, 112 Fed. Cl. 317, 323 (2013).

[48] *See* Appx31.

purchased was inadequate to hold the amount of water that would be contained in the reservoirs[,]"[49] should a large storm occur. In 2017, the Corps operated the dams under its 2012 Water Control Manual, which required a "conscious diversion of water"[50] that flooded Banker/Burnham's upstream properties.

The trial court also found that the Corps' actions caused "significant harm"[51] to the upstream properties, "almost entirely preventing their normal use and enjoyment. . . ."[52] "Water measuring as much as several feet in some cases inundated their homes—for as long as a week in multiple instances—destroying substantial personal property, causing structural damages, and rendering properties uninhabitable or unusable until repairs could be completed months or years later."[53] The Government-induced flooding destroyed Banker/Burnham's right to use and enjoy the protectable real and personal property interests they owned.[54]

The trial court also flatly rejected the Government's argument that Banker/Burnham lacked reasonable, investment-backed expectations that the Corps would not purposefully flood their properties.[55] "The law offers the

---

[49] Appx40; Appx8416-8418.

[50] Appx28.

[51] Appx31; Appx19; Appx30; Appx32-34; Appx44.

[52] Appx30; Appx31; Appx33.

[53] Appx31; Appx19-20; Appx44.

[54] Appx19; Appx30; Appx32-34; Appx44.

[55] *See Ideker Farms, Inc. v. United States*, 71 F.4th 964, 980 (Fed. Cir. 2023) (holding that the *Arkansas Game & Fish II* factors are irrelevant in the context of permanently recurring flooding).

government no loophole whereby it may escape takings liability by putting landowners on notice of the risk that it could or would take their property."[56] The trial court found that it was "undisputed"[57] that Banker/Burnham did not know "their properties were located within the reservoirs and subject to the attendant government-induced flooding."[58] The Government's argument that Banker/Burnham should have known their properties were subject to the risk of induced-reservoir flooding was negated by the trial court's extensive factual findings.[59] And the Government's suppositions about what it believes Banker/Burnham should have expected are irrelevant.

The trial court also correctly concluded that their expectations were objectively reasonable, finding it "highly tenuous"[60] that the upstream property owners "should know how to read and understand"[61] Key Maps or "recognize that the map annotations refer to government-induced flooding rather than naturally occurring flooding."[62]

---

[56] Appx42.
[57] Appx43.
[58] Appx43; Appx6196; Appx6203-6204; Appx6067; Appx6050; Appx6198.
[59] Appx7134; Appx7142; Appx7145; Appx7185.
[60] Appx43.
[61] Appx43.
[62] Appx43.

13

**B.**    **The Government's Police Power and Flood Control Act Arguments Were Rejected in this Court's *Milton v. United States* Decision**

In reversing the trial court's dismissal of the Tropical Storm Harvey downstream cases, this Court, in *Milton v. United States,*[63] rejected the Government's argument that it was immune from suit under the 1928 Flood Control Act and that it was not liable for a taking under the police power necessity doctrine. Those holdings are binding authority, *res judicata*, and are not open to attack in this appeal.[64] As this Court explained, "[a] general police power exception to property rights does not exist under Texas law,"[65] and the "Supreme Court has rejected the notion that private property is subject to 'unbridled, uncompensated qualification [of property rights] under the police power.'"[66]

The trial court found as a fact that there was no emergency—that the conditions resulting in the inundation of Banker/Burnham's properties resulted from Corps actions and decisions over the preceding years.[67] The trial court properly rejected the Government's arguments in support of its police power affirmative defense and its necessity affirmative defense.[68]

---

[63] *Milton*, 36 F.4th 1154.
[64] *Id.*
[65] *Id.* at 1161.
[66] *Id.* at 1162 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992)).
[67] Appx45.
[68] *See* Appx45.

The trial court also correctly rejected the Government's argument that the 1928 Flood Control Act constitutes a background principle limiting Banker/Burnham's property rights. This Court flatly rejected that argument in the Downstream appeal,[69] holding that Section 702(c)'s immunity provision "does not preclude"[70] the trial court's jurisdiction. Nothing in the Flood Control Act sets forth a legislative immunity provision against federal torts, and that Act neither amends the Constitution nor eliminates Banker/Burnham's right to just compensation for the Corps' taking of their property rights.[71]

### C.    The Trial Court Correctly Awarded Just Compensation for the Taking of Banker/Burnhams' Property Rights

The Government's sole argument for reversing the trial court's damage award is its erroneous contention that the just compensation award includes consequential damages. The Government contends that the just compensation should be limited to the value of the flowage easement and should not include compensation for any losses of personal property such as furniture and household effects destroyed by the Corps-induced flooding and similar damages.

But this Court recently rejected the Government's similar argument in *Ideker Farms*,[72] holding that the crops destroyed by the Government-caused flood were a

---

[69] *Milton*, 36 F.4th 1154.

[70] *Id.* at 1160.

[71] *See Scranton v. Wheeler*, 179 U.S. 141, 184-85 (1900).

[72] *Ideker Farms, Inc.*, 71 F.4th 964.

15

separate property interest claim from the flowage easement.[73] The Court held that Ideker Farms was entitled to damages as just compensation for the loss of its crops—these damages were not consequential.[74]

The trial court here correctly awarded damages for the taking of Banker and Burnham's personal property, such as their furniture destroyed by submersion in contaminated flood water.[75] The trial court also properly awarded Burnham displacement costs (for the loss of use of her property) to justly compensate her for losing use of her domicile to the taking.[76] The costs incurred by Burnham would not have happened had the Government not taken her property, and in awarding her these costs, the trial court's award placed Burnham in the position she would have been in had the property not been taken. The award of those costs was therefore proper.

The trial court's "award for structurally flooded properties reflects both the fact that the easement grants the government the permanent right to impound water

---

[73] *See Ideker Farms, Inc.*, 71 F.4th at 987–88.

[74] *Id.* at 986-87.

[75] *See* Appx75-77; *see* Appx32 (water in Banker/Burnham's homes was classified as Category 3 "black water" i.e., water with "a greater potential to harbor pathogens, including sewage, chemicals, fertilizer, and organic materials."); Appx9082; Appx8899.

[76] Appx82.

within the homes on the properties, and the structural damage [to those homes] the government caused by taking the easement."[77]

When a court awards just compensation, that award should be enough to put the owner of the property "in the same position monetarily as he would have occupied if his property had not been taken."[78] The Court should reject the Government's attempt to transform the trial court's modest awards of just compensation into awards of incomplete or unjust compensation.

## IV.    Argument

### A.    Standard of Review

"'Whether a taking compensable under the Fifth Amendment has occurred is a question of law based on factual underpinnings.'"[79] The Supreme Court stated in *Arkansas Game & Fish*,[80] "most takings claims turn on situation-specific factual inquiries." The trial court provided ample factual findings and reasoning to support its findings and conclusions. The Court reviews the trial court's factual findings under the clear error standard, which "gives considerable deference to the trial court's factual findings."[81] Based on the entire record, the Court reverses for clear

---

[77] Appx76; Appx9034-9059; Appx9060-9081.

[78] *United States v. Reynolds*, 397 U.S. 14, 16 (1970).

[79] *Cooley v. United States*, 324 F.3d 1297, 1301 (Fed. Cir. 2003) (quoting *Bass Enterprises Prod. Co. v. United States*, 133 F.3d 893, 895 (Fed. Cir. 1998)).

[80] *Arkansas Game & Fish*, 568 U.S. at 32.

[81] *Hendler v. United States*, 175 F.3d 1374, 1378 (Fed. Cir. 1999).

17

error only if it "'is left with the definite and firm conviction that a mistake has been committed.'"[82] This Court reviews legal errors de novo.[83]

### B.    The Trial Court Correctly Held That the Government's Actions Constitute a Physical Taking of a Permanent Flowage Easement

To establish a compensable taking under the Fifth Amendment, plaintiffs must establish (1) that they possess a constitutionally protected property right, and (2) that property interest has been taken for public use.[84] The first part of the two-part takings test is not at issue in this appeal. The Banker/Burnham owned homes upstream of the Barker and Addicks Dams, which "met their burden of establishing a valid property interest."[85] The Government does not challenge the trial court's holding that "Plaintiffs are owners of private properties not subject to flowage easements."[86]

To determine whether the Government had taken a property interest (flowage easement), the trial court applied the six-factor *Arkansas Game & Fish*[87] test, stating that although *Arkansas Game and Fish* involved a temporary taking and the taking here was permanent, "the same considerations"[88] were relevant.

---

[82] *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[83] *Dairyland Power Co-op. v. United States*, 645 F.3d 1363, 1369 (Fed. Cir. 2011).

[84] *See Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004).

[85] Appx29.

[86] Appx28; Appx5948-5950.

[87] *Arkansas Game & Fish*, 568 U.S. 23.

[88] Appx27.

After the trial court issued its liability ruling, this Court decided *Ideker Farms*,[89] holding that the taking of a permanent flowage easement should be analyzed as a per se taking and that *Arkansas Game & Fish*'s "multi-factor test does not determine whether a permanent taking has been effected by government action that will foreseeably produce intermittent invasions by flooding without identifiable end into the future."[90] The Court explained that when the Government physically acquires private property, "regardless of the size, invasiveness, or intermittent nature of the physical occupation,"[91] a straightforward, per se taking rule applies: "'The government must pay for what it takes.'"[92]

The facts here overwhelmingly support the trial court's holding that the Government has physically taken a permanent flowage easement on Banker/Burham's properties under either test. By constructing and operating the Addicks and Barker Dams to purposefully and severely flood Banker/Burnham's properties for many days—which would not have occurred in 2017 absent these Government actions—the Government physically appropriated a permanent flowage easement on Banker/Burnham's properties by physical invasion.

---

[89] *Ideker Farms, Inc.*, 71 F.4th at 980.
[90] *Id.* at 979.
[91] *Id.* at 978.
[92] *Id.* at 980 (quoting *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021)).

Here, as in *Ideker Farms*, distinguishing between a taking and a trespass is "much simpler"[93] than the Government would have the Court believe because the taking is "unquestionably"[94] a permanent appropriation of these property owners' right to exclude, in the form of a permanent flowage easement.

### 1. The Government's Intended Use and Operation of Addicks and Barker Is the But-For Cause of the Flooding, Not a Mere Trespass

The Government relies almost entirely on a single argument for reversal: that tropical storm Harvey was "unprecedented," an adjective that occurs 20 times in the Government's principal brief. But "precedent" is not the test this Court has prescribed for physical takings by flooding. This Court's precedents hold that a compensable taking occurs when "the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity."[95] Nor are tropical storms like Harvey unanticipated, unforeseen, or unheard of along Houston's Gulf Coast, as the Government argues.

Precedent is also irrelevant on these facts because, during Harvey, the Banker/Burnham properties would not have been flooded if the Government had not built, modified, or operated the Addicks and Barker Dams as it did.

---

[93] *Id.* at 980.
[94] *Id.*
[95] *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003)

### a. Harvey Was Not a Mere Trespass

The Government argues that the 2017 flood was a mere trespass because it was an isolated, allegedly "unprecedented event," citing and quoting dictum in *Cedar Point Nursery*.[96] But the Supreme Court has held that a flood "gains no automatic exemption from Takings Clause inspection"[97] even if the flood was unprecedented. The Government relies on cases involving isolated events deemed trespasses, which significantly differ from the facts here. In *Cedar Point*, the Supreme Court offers examples of a mere trespass: the single firing of a gun over the plaintiff's property[98] and "a truckdriver parking on someone's vacant land to eat lunch."[99] These examples involve property invasions that, unlike here, leave no lasting effects and cause no severe damage to the property.

The trial court found that the 2017 Government-induced submersion caused lasting and significant damages to the Banker/Burnham properties.

### b. Harvey Was Not an Isolated, Unprecedented Storm

Contrary to what the Government repeatedly asserts, Harvey was not an isolated, unprecedented event. "[T]he sheer frequency of significant storms in the

---

[96] *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021).
[97] *Arkansas Game & Fish*, 568 U.S. at 38.
[98] *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327 (1922).
[99] *Cedar Point Nursery*, 141 S. Ct. at 2069.

region both before and since construction of the dams"[100] cuts against that argument.

As the trial court found, there had been several large storms in the past,[101] such as the "Taylor storm,"[102] the "Hearne storm,"[103] the 1929 Storm,[104] the "1935 storm,"[105] Tropical Storm Claudette,[106] Tropical Storm Allison,[107] a "series of storms [that] caused flooding in the early 1990s,"[108] and the 2016 "Tax Day Storm," which "produced record flood pools"[109] at the reservoirs. Basically, as the detailed trial record confirms, large storms have hit this region about every 15-20 years.[110] Yet the Corps knowingly and repeatedly weighed the costs and benefits of purchasing more land upstream and decided against doing so,[111] finding "insufficient economic benefits to justify project modification."[112] The Government does not challenge these findings as clear error and thus waives any argument that they are not factually correct.

---

[100] Appx31; Appx8254; Appx5900-5902; Appx9012-9033.
[101] Appx4; Appx31; Appx36; Appx42-43.
[102] Appx5; Appx31.
[103] Appx5; Appx8; Appx31; Appx40.
[104] Appx4; Appx31.
[105] Appx4-5; Appx7; Appx31; Appx36.
[106] Appx17; Appx31.
[107] Appx17; Appx31.
[108] Appx12; Appx15; Appx31; Appx36-37.
[109] Appx17; Appx8837-8838; Appx9160-9161.
[110] Appx31; Appx8254.
[111] *See* Appx8-9; Appx12; Appx36; Appx40.
[112] *See* Appx13.

The Government makes much of the trial court's statement that Harvey was a "record storm," but the trial court found that "Tropical Storm Claudette in 1979 was roughly comparable in total rainfall, and was more intense but more localized[,]"[113] diminishing the idea that Harvey was record-setting in terms of rainfall.

Harvey was not "singular," a "rarity," or an "isolated event," as the Government argues. Furthermore, the Addicks and Barker dams were built to contain flooding from storms generating more rainfall than Harvey, further negating the Government's argument that the Corps—solely to save itself money[114]—can intentionally adopt an operating concept of imposing flooding with no legal right but nonetheless evade the Fifth Amendment. The Government's self-serving economic decisions cannot relieve the Government of its Fifth Amendment obligation to pay for what it takes.

### c. The Flooding of Banker/Burnham's Properties Was the Direct, Natural, and Probable Result of the Corps' Construction and Operation of the Dams

The Government erroneously argues that Harvey flooded the Banker/Burnham properties, not the Corps. Based on ample evidence, the trial

---

[113] Appx18.
[114] Appx89; Appx12; Appx36; Appx40; Appx5699 (expected damages of inundating land less than Government cost of buying land); Appx5717; Appx5833-5834; Appx5954-5955; Appx9090-9094; Appx9102-9111; Appx9117-9151; Appx9088.

court rejected this argument, finding that the Corps' actions included the design, construction, and modification of the Project and, as the Government admits, "the dams were designed to contain more water than the acquired land could hold."[115]

The Corps designed, constructed, modified and operated the Addicks and Barker dams with its eyes wide open, knowing that its operating concept would cause the flooding of privately owned upstream properties when large storms visit the region. Before the project's construction, between 1854 and 1935, "six major floods occurred in the Buffalo Bayou watershed, including the City of Houston."[116] The Buffalo Bayou watershed is downstream from the Addicks and Barker dams, which are strategically located to control the entire watershed area (i.e., all the runoff above the dams) for protecting downstream properties.[117]

The Corps took a calculated gamble when it chose not to condemn a flowage easement over Upstream properties like Banker/Burnham's. When designing and constructing the dams, the Corps determined the size of the reservoir embankments by reference to a hypothetical "design storm" based on "two previous storms: the Hearne storm and the Taylor storm."[118] Yet, when it came time for the Corps to purchase upstream land, the Corps based its purchasing decisions "on a historical

---

[115] Govt's Corrected Opening Brief (June 27, 2023), ECF No. 25 at 44.
[116] Appx4.
[117] Appx9002.
[118] Appx6; Appx5698-5699; Appx9152-9159.

storm metric (the 1935 storm) that was different—and, notably, smaller—than the design storm metric (which combined the Hearne and Taylor storms) it used for engineering the dam embankments."[119]

As a result, "the dams were designed to contain more water than the acquired land could hold."[120] The Corps rationalized its decision to purchase inadequate reservoir lands because "'the expected damages of inundating pastures and rice fields' would be less than the cost of buying additional land."[121]

Had the Corps not built the dams, or built them to a lower elevation, or acquired all the reservoir land that the dams could flood—Banker/Burnham's properties would not have flooded in 2017.[122] But for the Corps' actions, the rainfall runoff generated by Harvey would not have flowed upstream for many miles to flood Banker/Burnham's properties. The trial court found as a fact that the Corps, not the storm, was the essential, but-for cause of flooding Banker/Burnham's properties.[123]

---

[119] Appx7; Appx5855; Appx8415-8416; Appx9095-9100.
[120] Appx7.
[121] Appx9; Appx36; Appx5699; Appx8416-8418; Appx9083-9084; Appx9101.
[122] Appx42; Appx6057-6064; Appx8916-8917.
[123] Appx36-39; Appx8918-8991.

### d. The Corps' Design and Construction of the Dams Resulted in the Conscious Flooding of the Banker/Burnham Properties

The Corps possessed a decades-long understanding of the Project-induced risk of flooding upstream residential properties beyond government-owned land, which was inherent in the project's design, construction, and operation. The Corps' construction of dams to such a length and height that they would flood private property, coupled with its operating concept of imposing flooding on private land with no legal right (to save itself money), render the Government's actions the direct, natural, or probable cause of invading Banker/Burnhams' property interests.

In contrast to the attenuated damage the Corps may have contributed to in *Columbia Basin Orchard*, here, the Corps' design and operation of the dams—with a storage capacity that exceeds government-owned land, along with an operating procedure that mandates the sacrifice of upstream properties whenever climatological conditions so require—foreseeably and predictably resulted in the flooding of upstream properties.

The trial court found that the flooding of Banker/Burnham's properties "was at a minimum, objectively foreseeable."[124] Further, the trial court found that the Government *intended* for the Banker/Burnham properties to be flooded even in

---

[124] Appx37; Appx8398.

"standard size" storms,[125] and the Corps operated, designed, constructed, and modified the dams to do so.[126]

The Government does not challenge the trial court's finding that "the Corps believed flooding beyond the extent of government-owned land was probable. . . [,]"[127] because these findings are all supported by the Corps' own documents:

- When construction of the dams was first contemplated, the "Corps noted in its **1940** Definite Project Report . . . that the Buffalo Bayou watershed was situated 'in an area subject to all of the circumstances making possible large storms.'"[128] The Corps' 1940 report states that "[a] careful study of the [] maps of past storms indicate that only chance has prevented the occurrence of a storm over the basin much larger than the 1935 storm centered at Westerfield."[129]

- The Corps compounded the problem by installing control gates on the outlet conduits of the dams, which "while beneficial for the downstream protection of downtown Houston, also forces the prolonged storage of water in the reservoirs and increases each reservoir's pool size."[130] After completing construction of the gates in **1963**, "the Corps calculated that the maximum design

---

[125] Appx12.
[126] *See* Appx45.
[127] Appx37.
[128] Appx4-5; Appx36.
[129] *See* Appx36; Appx5; Appx73; Appx8398.
[130] Appx9-10.

[water surface] in Addicks and Barker . . . exceed[ed] the government-owned land by 6.6 vertical feet in Addicks and 8.1 vertical feet in Barker."[131]

- An internal **1973** memorandum from the Corps' Chief of the Engineering Division in the Galveston, Texas district, for instance, stated that the Corps should "develop a history and rationale for our operating concept of imposing flooding on private lands without benefit of flowage easement or other legal right."[132]

- A **1974** Corps inspection report, in which the Corps internally lamented that "[d]evelopment of the area will eventually place the Government in the position of having to flood the area within the reservoir with the accompanying damages in order to protect downstream improvements in the event of a severe future storm."[133]

- As the property upstream from the dams became increasingly developed in the **1980s**,[134] the Corps issued foreboding internal reports and memoranda on the risk of flooding beyond government-owned land. For example, an internal **1980** Corps letter describes how, based on the revised rainfall and hydrology studies, the "original real estate lines are now 4.5 feet and 3.1 feet below

---

[131] Appx10.

[132] Appx36 (quoting Appx8836).

[133] *See* Appx10-11 (citing Appx8863-8864); Appx36; Appx5743-5744.

[134] *See* Appx10.

the current Standard Project Flood levels for Addicks and Barker, respectively."[135] That same letter candidly remarks how "the public has not been informed of any of these problems. . . ."[136]

- In **1995**, in response to a series of storms causing what was then the record flood pool levels at the Addicks and Barker Dams, the Corps issued a report that recommended "purchasing flowage easements, land buyouts, channel enlargements, excavating the government-owned land, and/or adopting a flood warning and evacuation plan."[137] Despite its decades-long understanding that its proscribed use and operation of Addicks and Barker in connection with even moderate storm events would exceed the government-owned land, the Corps chose to "accept existing condition and risk through No Action" after "finding 'insufficient economic benefits to justify project modification[.]'"[138]

- In the **mid-2000s**, the Corps formed an emergency response team that "discussed the possibility of upstream flooding on multiple occasions."[139]

- In **2012**, the Corps adopted the Water Control Manual for Addicks and Barker that was in use during the 2017 induced-flooding event. Consistent with the

---

[135] Appx11-12; *see also* Appx8885-8889; Appx8891; Appx8893-8898; Appx9112-9113.

[136] Appx9112-9113; Appx8900-8915.

[137] Appx13.

[138] *See* Appx13; *see also* Appx9117-9151.

[139] Appx 15; Appx9183-9186.

Project's sole purpose of protecting downtown Houston and its Ship Channel, the Operations Manual's plan for reservoir regulation requires that the Corps "'utilize to the maximum extent possible, the available storage to prevent the occurrence of damaging stages on Buffalo Bayou,'"[140] and "includes all of the land in the reservoirs behind the embankments, including land the government does not own."[141]

- In **2017**, the Corps relied on its 2012 Water Control Manual to instruct its Corps' operations during Harvey.[142] As Harvey approached, "the Corps knew that flooding 'beyond the government[-]owned land limits' in Addicks and Barker was imminent."[143] The Corps was right. Barker Reservoir crested at 101.6 feet above sea level, flooding the Bankers' home, which lies within the Barker Reservoir at a first-floor elevation of 100.7 feet.[144] The Burnham property, located within the Addicks reservoir at elevation 105.4, flooded to a level of 4 to 5 feet of highly contaminated "blackwater" when Addicks reservoir crested at 109.1 feet.[145]

---

[140] Appx16; Appx40-41; Appx8480; Appx5566-5567.

[141] Appx16; Appx5566-5567.

[142] *See* Appx45 ("When Harvey struck . . . 'the actions available to the government for dealing with the relevant emergency were constrained by the design of the dams and impoundments, the Corps' 2012 Water Control Manual, and the Corps' normal operating procedures.'. . . But these constraints only existed because the Corps' design of the dams contemplated flooding beyond government-owned land onto private properties.") (citations omitted).

[143] Appx18.

[144] Appx19; Appx9176-9182; Appx9089.

[145] Appx19; Appx9176-9182; Appx9089.

### 2. The Corps' Actions Always Benefitted the Houston Areas, Never Upstream Properties

The dams provided no benefit or flood protection for the upstream property owners—the sole purpose of the dams was to protect the downtown Houston and its Ship Channel from flooding.[146] Banker/Burnham did not expect the Corps to control the flood, perfectly or otherwise; rather, Banker/Burnham expected only that the Corps would not intentionally collect stormwater in their homes, thereby destroying them—a reasonable expectation given that the Corps had no legal right to do so.[147]

Contrary to the Government's arguments, Banker/Burnham's properties now remain permanently and continuously subject to the Government's right to flood them. The trial court did not err in finding a permanent taking because "the government retains the rights to this flowage easement on a permanent basis with a continual right of re-entry."[148] While Harvey may have affected an unusually large geographic area, the evidence showed that Harvey's maximum rainfall was not unprecedented in the region,[149] that "[t]here is a probability that [a rain event

---

[146] *See* Appx40; Appx9176-9182; Appx5566-5567; Appx5831.
[147] *See* Appx28; Appx42.
[148] Appx26.
[149] Appx31.

similar to Harvey] could happen again in the future [over Addicks and Barker watersheds][,]"[150] and that frequent tropical storms occur in the region.[151]

### 3.    Future Flooding Is Inevitable

The Government complains that the trial court should have, but did not, specify when another large storm will occur in the region again. But nothing in takings law involving flooding requires the trial court to specify a future date of another large storm. Here, the trial court pointed to an abundance of evidence confirming that the Corps' actions have and will again cause the flooding of Banker/Burnham's properties in the reasonably foreseeable future. The trial court found that "in the nearly inevitable event of a future storm of significant magnitude, it can be expected that the government would similarly impound water on plaintiffs' properties to prevent what would be catastrophic flooding downstream."[152] Trial evidence showed that "a series of consecutive moderate storms could have the same effect" as the Government-induced flooding that occurred upstream in 2017,[153] and that "this was not the first time that water had exceeded government-owned land."[154] Hence, because it is the holding capacity of the dams and the Corps' operation plan to save downtown Houston at the expense

---

[150] Appx31.
[151] Appx31.
[152] Appx31.
[153] Appx37; Appx12.
[154] Appx31; Appx17.

of Upstream properties—not the unique characteristics of Harvey—that will cause this future flooding, the Government (not Harvey) is the but-for cause of this invasion of Banker/Burnham's property rights.

The Government's admission that "the Corps would acquire additional realty if the Project were built today,"[155] confirms that it is the Corps-built dams and the operating plan for them that is the but-for cause of the invasion of Banker/Burnham's property rights—not Tropical Storm Harvey, which the Government now tries to blame as the but-for cause of Banker/Burnham's loss of property rights.

The Government eventually falls back on a policy argument that, if held liable for a taking here, designing a dam for such a large storm would be cost-prohibitive. But the problem with the Corps' actions here is that it built a dam that was too large to accommodate the reservoir sizes for the upstream property it had acquired. As the Government concedes, "flooding of [upstream] land w[as] less costly than acquiring the property."[156] And, as the trial court found, "[t]hese differing metrics were not an oversight; rather, they were driven by a calculated decision."[157]

---

[155] *See* Govt's Corrected Brief (June 27, 2023), ECF No. 25 at 33; Appx8756.
[156] *See* Govt's Corrected Brief (June 27, 2023), ECF No. 25 at 32.
[157] Appx7; Appx45.

The Government's contention that if the Addicks and Barker Dams were built today, the cost of buying more flowage easements on upstream residential developments might mean that the Project would not have been built. But the Government explains neither why that is true nor why it matters in a taking analysis. Regardless of the trade-offs the Corps made in deciding how to design the dams, such considerations are irrelevant to the per se taking analysis. What is relevant are the Corps' actions and their direct consequences: here, the Government intentionally took a flowage easement over Banker/Burnham's properties.[158]

### 4. This Case Is Based on the Corps' Actions, Not Its Failure to Act

The Government tries unsuccessfully to develop an argument that the taking claims fail because the Corps cannot be required to buy more land to avoid the uncompensated taking of a flowage easement on the subject properties and cannot be required to pay more compensation for land it has not budgeted for, citing a statement from *St. Bernard's Parish*.[159] But since this case is not based on the Corps' failure to act, the Court's holding on *St. Bernard Parish* is wholly inapposite.[160]

---

[158] Gov't Corrected Brief, ECF No. 25 at 36 (June 27, 2023).

[159] *See St. Bernard Par. Gov't v. United States*, 887 F.3d 1354 (Fed. Cir. 2018).

[160] *See In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 138 Fed. Cl. 658, 667 (2018); Appx1022-23 (noting that allegations speak to Government's intent and foreseeability of the taking claims).

Rather, the taking here arises from the Corps' actions in designing, constructing, modifying, and operating the dams, which directed flood waters onto Banker/Burnham's properties. Had the Corps not built the dams, Banker/Burnham would not have flooded, and there would be no taking claim. Their claim here is based on the Corps' actions—not failure to act.[161] And once the Government appropriates private property rights for public use, as it plainly has here, the constitutional duty automatically attaches.[162]

### 5. The Government's Good Intentions Do Not Shield It From Takings Liability

The Government argues that the trial court failed to consider the Project's construction and operation as a whole: "The Project's purpose is to protect downstream areas from flooding,"[163] and that operation of the Project during Harvey "prevent[ed] an estimated $7 billion in projected losses downstream in Houston."[164] The Government fails to cite any authority or even to develop arguments as to why its successful use of the dams to protect downtown Houston

---

[161] *See generally St. Bernard Par. Gov't v. United States*, 887 F.3d 1354 (Fed. Cir. 2018).
[162] *See Jacobs v. United States*, 290 U.S. 13, 16 (1933).
[163] *See* Gov't Corrected Brief, ECF No. 25 at 35 (June 27, 2023); Appx6588; *see* Appx9171-9175; Appx9176-9182.
[164] *See* Gov't Corrected Brief, ECF No. 25 at 35 (June 27, 2023); Appx5664; Appx6572; Appx9171-9175; Appx9176-9182.

by deliberately sacrificing upstream neighborhoods should exempt it from paying just compensation for the property taken to build and operate this project.

The Just Compensation Clause was intended for just this circumstance; the Fifth Amendment is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."[165]

Like most public works, the Addicks and Barker Dams benefit a targeted segment of the public (downtown Houston and its Ship Channel). But the Fifth Amendment requires the Government to pay just compensation for private property that it takes for public use. If projects built and operated for the national interest (like protecting downtown Houston and its Port from flooding) were exempt from the just compensation requirement, as the Government appears to argue, then just compensation would rarely be due—and the Fifth Amendment would be eviscerated.

### 6. Harvey Did Not Break the Chain of But-for Causation

Although it is literally true that the Harvey storm was outside of the Government's control, it is equally true that the Corps did control and hold back the rainfall runoff generated by Harvey in the Upper Buffalo Bayou watershed. Further, it is flatly incorrect that the Corps could not anticipate large storms such as

---

[165] *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

36

Harvey. Nor is it true that Harvey broke the chain of causation for plaintiffs to establish a taking. Large storms in this region are common. In fact, the rainfall from the original 1899 design storm for Addicks and Barker was larger than Harvey's rainfall in the pertinent watersheds.[166] Accordingly, a large storm resulting in significant rainfall was foreseeable and actually foreseen.[167]

Scientific advances in hydrology and meteorology, together with the recorded occurrence of massive storms in the pertinent region (such as Tropical Storm Claudette in 1979), only served to amplify the Corps' actual awareness of predicted rainfall amounts generated from large storms.[168] Further, these scientific advances showed an even higher maximum size for the reservoir pool in each reservoir: 118.1 feet under existing conditions in Addicks and 110.3 feet under existing conditions in Barker.[169] The Corps foresaw that storms capable of overflowing government-owned land were likely to occur, and despite that knowledge, it still intended to occupy the property concerned without lawful authority or excuse.[170] Events that are foreseeable cannot, under any interpretation of takings law, be considered an intervening act that breaks the chain of causation.

---

[166] Appx5; Appx7-9; Appx6596.
[167] Appx36 (finding that at all relevant times, "defendant should have objectively foreseen that the pools could and would exceed government-owned land."); Appx9115.
[168] Appx11; Appx31; Appx9115.
[169] Appx11; Appx41; Appx8869-8872.
[170] Appx41.

In addition, this argument overlooks that Harvey did not flood Upstream properties—that was caused by the Corp's intended use and operation of Addicks and Barker Dams. The Corps consciously decided to build Addicks and Barker to protect downtown Houston and adopted an operating concept that will inevitably flood Banker/Burnham's properties in the future. When the storm came, it was among many regularly anticipated large storms that the Corps had planned for and for which it had built and expanded the Addicks and Barker embankments and control facilities.[171] And that Addicks and Barker successfully held back and controlled Harvey's rainfall runoff as intended did not break the chain of causation; it completed it.[172]

As this Court analyzed the causation question in *St. Bernard Parish*,[173] to establish causation in a flooding case, the plaintiffs must show that the flooding that did occur was worse than "the flood damages that would have occurred if there had been no government action at all."[174] But for the Corps' construction, use, and operation of the dams and reservoir, upstream properties would not have flooded; nor would they have flooded but-for the Corps' premeditated operating

[171]Appx9117-9151.

[172] Appx8839-8856 (the Corps' Report of Performance for the New Pool of Record. Project was operating as expected with no significant problems during this pool of record.)

[173] *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354 (Fed. Cir. 2018).

[174] *Id.* at 1363; *see also Board of Supervisors of Issaquena County, Mississippi v. United States*, No. 2022-2026, 2023 WL 4985729 (Fed. Cir. Aug. 4, 2023).

procedure during the storm, aimed at subjecting the upstream properties to flooding for the protection of downstream properties.[175]

The Government cites a scattershot of cases that have no bearing on the but-for causation issue in this case:

- *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*[176] is not a flooding case, and its dictum that government-caused accidents (like auto crashes) are torts has no relevance to Banker/Burnham's case.

- *Wilfong*[177] is not a flooding case but a failed taking claim dealing with chickens and airspace that incidentally discussed flooding cases in dictum.

- *Sanguinetti*[178] found no taking from the construction of a canal because "[p]rior to the construction of the canal the land had been subject to the same periodical overflow."[179]

- The Government's reliance on *Bartz v. United States*[180] for the proposition that there is no taking where excessive precipitation was the "root cause" of flooding is misplaced. In *Bartz*, some of the plaintiffs were beneficiaries

---

[175] *See* Appx45.
[176] *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 799 F.2d 317 (7th Cir. 1986).
[177] *Wilfong v. United States*, 480 F.2d 1326 (Ct. Cl. 1973).
[178] *Sanguinetti v. United States*, 264 U.S. 146 (1924).
[179] *Id.* at 149.
[180] *Bartz v. United States*, 633 F.2d 571, 577 (Ct. Cl. 1980).

of the Corps flood control project, who benefitted from the project's flood protection and simply claimed the need for additional protection.[181]

- *Columbia Basin Orchard v. United States*,[182] is also distinguishable. There, the Government sank a shaft, encountered water, and pumped out 2,200 acre-feet of water. The pumped water, in concert with 38,000 acre-feet of runoff from "unprecedented rainfall," eventually caused Orchard Lake to rise until it overflowed the orchard spring, contaminating it with alkali salt. The Court of Claims held that the plaintiff had failed to establish a taking because he failed to show that "the discharge of the waters from the shaft into [the] Lake would have caused it to overflow the spring."[183] The Court reasoned that the Government could not have foreseen that the water it pumped from the shaft would contaminate the orchard spring.[184]

The Government also fails to address the cases in which a taking has been found due to recurring, intentional, and authorized acts in which the Government is held to have taken a flowage easement—an interest in property—in order to carry out the intended operation of its Project.[185] This is precisely the circumstance here.

---

[181] *See id.* at 578.

[182] *Columbia Basin Orchard v. United States*, 132 F. Supp. 707 (Ct. Cl. 1955).

[183] *Id.* at 709.

[184] *Id.* at 711.

[185] *See, e.g.*, *United States v. Dickinson*, 331 U.S. 745, 748 (1947); *United States v. Cress*, 243 U.S. 316, 327–28 (1917); *Arkansas Game & Fish Comm'n. v. United States*, 736 F.3d 1364, 1369-1375 (Fed. Cir. 2013); *see also Vaizburd v. United*

### 7. The Trial Court Correctly Determined that Banker/Burnham's Investment-Backed Expectations Were Reasonable

As noted, the trial court applied the multi-factor taking test in *Arkansas Game & Fish*,[186] including the trial court's analysis as to whether the plaintiffs' expectations are reasonable. But, as also explained, this Court, in *Ideker Farms*, has applied a per se taking test in permanent, physical taking cases, such as this one.[187] As the trial court itself noted, there is tension between applying the reasonable expectations analysis in a physical taking of a flowage easement.[188] Physical (per se) taking analysis does not include an examination of the plaintiff's reasonable, investment-backed expectations. Otherwise, Mrs. Loretto should have known that New York City was wiring apartment buildings for cable, and there would have been no finding of a physical taking.[189]

Further, as the Supreme Court observed in *Horne v. Department of Agriculture*, "people still do not expect their property, real or personal, to be actually occupied or taken away."[190]

---

*States*, 384 F.3d 1278, 1283 (Fed. Cir. 2004) & nn.3-4 (Fed. Cir. 2004); Appx8762-8770; Appx9162-9170.

[186] *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012).

[187] *Ideker Farms, Inc. v. United States*, 71 F.4th 964, 979 (Fed. Cir. 2023).

[188] Appx41.

[189] *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 (1982).

[190] *Horne*, 576 U.S. at 361; Appx7020.

The Government argues that Banker/Burnham should have expected that the Government would physically expropriate a flowage easement over (and through) their properties. This argument is not only contrary to the trial court's factual findings, it finds no support in the record. For starters, the government did not dispute[191] that Banker/Burnham did not know their properties were "located within the reservoirs and subject to attendant government-induced flooding."[192] The trial court also found that FEMA and Harris County officials, who collaborated on the Flood Insurance Rate Maps (FIRM) showing the Addicks and Barker reservoir flood pools, testified that the FIRM maps showing that information had not been made public. Corps employees indicated that "multiple sources" had asked the Corps to include reservoir inundation limits on public-facing FIRMs because FIRMs are "the main source residents use for flood risk information for their property." But FEMA's public-facing maps nonetheless do not show the reservoir pools.[193]

The trial court rejected the Government's argument that Banker/Burnham should be on constructive notice that their properties were subject to government-induced flooding.[194] The Government cites no authority for relying on constructive

---

[191] Appx43.
[192] Appx43.
[193] Appx55.
[194] *See* Appx42.

notice as a defense against the physical taking of a flowage easement, where, as here, the trial court found the Plaintiffs had no actual knowledge that the Corps intended to flood their properties in a large storm event.[195] Nor does the Government explain what *specific* information would have operated to put anyone on constructive notice. Instead, the Government appears to claim that plaintiffs were under some duty to make an independent investigation to ferret out what the Government has known, and suppressed, from the inception of its Project.

The Government's reliance on *Cienega Gardens*,[196] which states that the plaintiffs' reliance must be objectively reasonable, is misplaced.[197] For here, Banker/Burnham's expectations were that their properties would not be flooded due to the Corps' operation of the project were both subjectively[198] and objectively reasonable, as the trial court correctly held: "[I]t is quite reasonable to conclude that the average person in the community was likely unaware of the risk."[199]

---

[195] *See* Appx42 ("Even if notice had a bearing, plaintiffs would still prevail here because they neither knew, nor reasonably should have known, of the risk posed by the dams.").

[196] *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003).

[197] *See* Gov't Corrected Brief, ECF No. 25 at 42 (June 27, 2023).

[198] *See* Appx43 ("It is undisputed that plaintiffs did not know their properties were located within the reservoirs and subject to attendant government-induced flooding.").

[199] Appx44.

The trial court found that there was no convincing evidence that the Banker/Burham objectively or reasonably should have known about the risk of government-induced flooding:

- **Key Maps, FEMA Maps, and United States Geological Survey quadrangle maps**—The trial court found that to infer the possibility of flooding from the Key Maps would require a "baseline knowledge about property elevations,"[200] something the average citizen homeowner does not generally know. The trial court further stated that it was highly tenuous that an average citizen would know how to read and understand the information on these maps and that "the map annotations refer to government-induced flooding rather than naturally occurring flooding."[201]

- **Subdivision plats in Fort Bend County**—The trial court found that the subdivision plats failed to put the upstream plaintiffs on notice of government-induced flooding because the plats are "replete with miniscule details."[202] And "the Government's own witness, the Fort Bend County Drainage District's Chief Engineer, testified that the plat language was not successful in informing the public of the risks involved."[203]

---

[200] Appx43.

[201] Appx43.

[202] Appx43-44.

[203] Appx44; Appx5911.

- **Public meetings**—The trial court found that the Corps' public meetings were not effective and that there was "no evidence" that the meetings were heavily attended or well publicized.[204] "That not one of the plaintiffs . . . was aware of the situation regarding government-induced flooding is also telling with respect to the effectiveness of the meetings. . . ."[205]

The Government fails to offer contradictory evidence to support its contention that the trial court was clearly erroneous in relying on this evidence. Rather, the Government contends that Banker/Burnham should have been held to have a "heightened burden" beyond the general public's understanding of risks to their properties—but cites no support for this proposition. Rather, the Government makes up its "heightened burden" argument from the whole cloth.

The Government complains that the trial court imposed an "improper" burden on it by noting the public hearings were not effective, well-attended, or well-publicized. But the trial court imposed no burden on the Government other than to reach the factual conclusion that the Corps' efforts were not effective. Common sense and logic dictate that ineffective notice does not support constructive notice.

---

[204] Appx44; Appx5600-5601.
[205] Appx44; Appx6190 (Banker); Appx6204 (Burnham).

45

This Court, in *Milton v. United States*,[206] which involves the downstream taking claims, rejected the Government's argument that the owners' expectations are determined as of the date they acquired their properties.[207] The Government now argues that this Court's holding only involved "threshold issues about conditions on Plaintiffs' property interests."[208] Not so. The Court's ruling was a legal ruling: "There is no blanket rule under Texas law that property rights are held subject to owners' expectations on acquisition."[209]

On appeal, the Government cannot show clear error, having failed to identify any evidence in the record to prove that the Plaintiffs were at all aware of the flooding risk to their upstream properties due to the Corps' flood control project.

### C.    Plaintiffs' Property Rights Were Not Limited by the Police Power or the 1928 Flood Control Act

In *Milton v. United States*,[210] a case involving the same Addicks and Barker facilities and the same tropical storm Harvey, this Court rejected the Government's argument—repeated in this case—that Appellants lacked a compensable property right because their title was held subject to the valid exercise of the police power by the government to provide for public health and safety, and because the 1928

---

[206] *Milton v. United States*, 36 F.4th 1154 (Fed. Cir. 2022).
[207] *Id.* at 1162.
[208] *See* Gov't Corrected Brief, ECF No. 25 at 45, n.5 (June 27, 2023).
[209] *Milton*, 36 F.4th at 1162.
[210] *Milton*, 36 F.4th 1154.

Flood Control Act immunized the Government from takings liability for floods caused by facilities authorized under the Act.[211] Because these *Milton* rulings are binding authority that governs the outcome in this case,[212] the Court should—as the Government appears to concede[213]—simply reject these Government arguments out-of-hand.

Additionally, the Government fails to show any error in the trial court's rejection of its proffered necessity defense.

### 1. The Government's Exercise of "Police Powers" Did Not Limit Plaintiffs' Property Right to Be Free From This Government-Caused Invasion By Flooding

Banker/Burnham's taking claims are not limited by any exercise of federal police power. For starters, the federal Government has no police power. "The traditional *police power of the States* [that] is defined as the authority to provide for the public health, safety, and morals,'"[214] and "[t]he Constitution . . . withhold[s] from Congress a plenary police power."[215] The Supreme Court has "'rejected readings of . . . the scope of federal power that would permit Congress to

---

[211] *See id.* at 1160 (holding that the Flood Control Act's "Section 702c . . . does not preclude Court of Federal Claims jurisdiction over this case.").

[212] *See Preminger v. Sec'y of Veterans Affs.*, 517 F.3d 1299, 1309 (Fed. Cir. 2008).

[213] *See* Govt's Corrected Opening Brief (June 27, 2023), ECF No. 25 at 49.

[214] *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991) (emphasis added).

[215] *United States v. Morrison*, 529 U.S. 598, 618 (2000) (quoting *United States v. Lopez*, 514 U.S. 549, 566 (1995)).

exercise a police power.'"[216] "[T]he police power, which the Founders denied the National Government and reposed in the States,"[217] is a "constitutionally mandated division of authority [that] 'was adopted by the Framers to ensure protection of our fundamental liberties.'"[218]

Further, the Fifth Amendment's just compensation requirement applies to exercises of the police power, just as it does to the exercise of other governmental powers. In *Pennsylvania Coal v. Mahon*,[219] the Supreme Court held that a state statute that prohibited the mining of coal from beneath dwellings to avoid subsidence as an exercise of state police power was an uncompensated taking and therefore invalid. Justice Holmes, writing for the majority, stated:

> The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. [] When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.[220]

Although some earlier cases held that a statute or regulation adopted under the state's police power to protect public health, safety and morals could not be a

---

[216] *See Morrison*, 529 U.S. at 618–19 (quoting *Lopez*, 514 U.S. at 584-85).

[217] *Id.* at 618.

[218] *Lopez*, 514 U.S. at 552 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991)).

[219] *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922).

[220] *See id.* at 415 (internal citations omitted).

compensable taking,[221] the Supreme Court has, since its decision in *Mahon*,[222] created a significant body of regulatory takings law, from *Penn Central*[223] to *Pakdel*,[224] holding that state police power regulations and statutes are, in fact, compensable takings. There is no police power exemption from Fifth Amendment just compensation—even for states—and there has been none for more than a century—since *Mahon* decided that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."[225]

Finally, the police power cases on which the Government relies concern state regulatory taking claims that are properly analyzed under the *Penn Central* multi-factor test, and not under the per se test applicable to physical takings like flooding. Under Supreme Court precedent, it is "inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa."[226]

The Supreme Court has recently reaffirmed that "[w]hen the government physically acquires private property for a public use, the Takings Clause imposes a

---

[221] *See, e.g.*, *Mugler v. Kansas*, 123 U.S. 623 (1887).
[222] *Mahon*, 260 U.S. 393.
[223] *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).
[224] *Pakdel v. City and County of San Francisco, California*, 141 S. Ct. 2226 (2021).
[225] *Mahon*, 260 U.S. at 415 (1922).
[226] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002).

clear and categorical obligation to provide the owner with just compensation."[227]

The Government effects a compensable physical taking when it "uses its power of eminent domain to formally condemn property," "[a]nd the government likewise effects a physical taking when it occupies property—say, by recurring flooding as a result of building a dam."[228] Physical takings, like the flooding of Banker/Burnham's properties in this case, "constitute the 'clearest sort of taking,'[] and we assess them using a simple, *per se* rule: The government must pay for what it takes."[229]

### 2. The Government Cites No Flooding Cases in Support of Its Police Power Argument

Government-caused flooding of private property is the paradigmatic example of a physical taking compensable under the Fifth Amendment.[230] As this Court's predecessor succinctly held in *Cotton Land Company*,[231] "the Government built its public improvement. The plaintiffs lost their land. The loss resulted

---

[227] *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021).

[228] *Cedar Point Nursery*, 141 S. Ct. at 2071.

[229] *Cedar Point Nursery*, 141 S. Ct. at 2071 (internal citation omitted) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)).

[230] *See generally Pumpelly v. Green Bay Company*, 80 U.S. 166 (1871).

[231] *Cotton Land Co. v. United States*, 75 F. Supp. 232 (Ct. Cl. 1948).

naturally from the improvement. We hold that the plaintiffs are entitled, under the Constitution, to be compensated."[232]

Yet here, as it argued unsuccessfully in *Milton*, the Government argues that Banker/Burnham were not deprived of a compensable property interest because "[a]ll private property is held subject to certain core exercises of the government's police power."[233] But the Government cites no flooding case to support this bold assertion and, as this Court ruled in *Milton*, "the Government stretches the holdings of the cases it cites to reach that conclusion."[234] As this Court has held, without a flooding easement, the Government has no right to flood private properties without paying just compensation: "A general police power exception to property rights does not exist under Texas law," nor under federal law.[235]

In *Milton*,[236] this Court flatly rejected the identical police power argument the Government makes here, holding that "Appellants have alleged cognizable property interests in flowage easements."[237] This Court reasoned that "Texas courts have recognized that property owners have interests in flowage easements under

---

[232] *Id.* at 235; *see, e.g.*, *Ridge Line, Inc.*, 346 F.3d 1346; *Arkansas Game & Fish*, 736 F.3d 1364; *Ideker Farms, Inc.*, 71 F.4th 964; *Bd. Of Supervisors of Issaquena Cnty., Mississippi v. United States*, No. 2022-2026, 2023 WL 4985729 (Fed. Cir. Aug. 4, 2023); *Cress*, 243 U.S. at 327–328.

[233] *See* Gov't Br. at 46, ECF no. 25 (June 27, 2023).

[234] *Milton v. United States*, 36 F.4th 1154, 1161 (Fed. Cir. 2022).

[235] *Milton*, 36 F.4th at 1161.

[236] *Milton*, 36 F.4th 1154.

[237] *Id.* at 1158.

Texas law," and that "[a] general police power exception to property rights does not exist under Texas law,"[238] citing numerous cases. Noting that "[t]he Supreme Court has rejected the notion that private property is subject to 'unbridled, uncompensated qualification under the police power,'"[239] the *Milton* court concluded that, in accepting the Government's police power argument, "the Court of Federal Claims [in the downstream litigation] erred in concluding that Appellants failed to assert a cognizable property interest."[240]

But the property right Banker/Burnham held in their land and homes was fee simple. *Milton* is *stare decisis* and this Court should again reject any argument that Banker/Burnham lack a cognizable property right.

### 3. The Government Fails to Address the Destruction of Banker/Burnham's Right to Exclude Flood Waters From Their Properties

Banker/Burnham's right to exclude is "one of the most treasured" rights of property ownership.[241] Plaintiffs' properties were nearly all residential, and the vast majority were the owners' sole domicile—the Government's actions forced Banker/Burnham from their homes. The trial court correctly held that the Government, by designing, constructing and operating the Addicks and Barker

---

[238] *Id.* at 1161.

[239] *Id.* at 1162 (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992)).

[240] *Id.*

[241] *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982).

facilities so as to purposefully occupy, submerge, and destroy the
Banker/Burnham's properties as part of the proscribed water control manual,
deprived them of their right to exclude others, "but especially the
Government"[242]—physically appropriating a flood easement for itself.

The Government knew that, as designed, constructed, modified, used, and
operated, Addicks and Barker would submerge lands—including
Banker/Burnham's lands—for which it had failed to acquire either title or a flood
easement. As the trial court found that, "[p]ut simply, the dams were designed to
contain more water than the acquired land could hold."[243] The Government's
failure to acquire any right to flood Banker/Burnham's land was intentional: "The
Corps based its land-purchase decision, at least in part, on a calculation that 'the
expected damages of inundating pastures and rice fields' would be less than the
cost of buying additional land."[244]

As early as 1973, the Corps "suggested that the project engineer research the
background of the existing situation and develop a history and rationale for our
operating concept of imposing flooding on private lands without benefit of flowage
easement or other legal right."[245] In 1992 the Corps issued a report on anticipated

---

[242] *Hendler v. United States*, 952 F.2d 1364, 1374 (Fed. Cir. 1991).
[243] Appx7; Appx8882.
[244] Appx9.
[245] Appx10.

flooding damages which could occur beyond government-owned property in Addicks and Barker calculating that the "Possible Maximum Flood would affect over 4,000 structures valued at approximately $725 million and cause damages of $245 million."[246] In that same time period, it completed internal surveys of over 9,500 residential structures located within the Project's "standard project floodplain" for the purpose of determining flood-damage estimates.[247] The Corps also prepared internal "Reservoir Structure" maps that depicted the elevations of these surveyed upstream structures, thereby gaining an "appreciation of the specific risks upstream of Addicks and Barker associated with a severe storm."

In 1995 the Corps evaluated the possibility of acquiring the needed flood easements, but "decided to take no action upstream, finding 'insufficient economic benefits to justify project modification.'"[248] The Corps even developed a Fact Sheet which stated that "the design flood pool boundary exceeded the government-owned land."[249] and the local Flood Control District reported that "'more than 8,000 acres [are] within the reservoir 'fringe' areas between the limits of the government[-]owned land and the . . . maximum flood pools.'"[250]

---

[246] Appx12.
[247] Appx13; Appx5599-5600; Appx9117-9151.
[248] Appx13.
[249] Appx14.
[250] Appx14; *see also* Appx13.

In the mid-2000s the Corps formed an emergency response team that "discussed the possibility of upstream flooding on multiple occasions."[251] In 2012 the Corps adopted the Water Control Manual for Addicks and Barker that the Corps followed in 2017. The Operations Manual requires that the Corps "'utilize to the maximum extent possible, the available storage to prevent the occurrence of damaging stages on Buffalo Bayou,'"[252] and "includes all of the land in the reservoirs behind the embankments, including land the government does not own."[253]

As Harvey approached, "the Corps knew that flooding 'beyond the government[-]owned land limits' in Addicks and Barker was imminent."[254] The Corps was right. The Bankers' home flooded to a depth of 1.1 feet after Barker reservoir crested at 101.6 feet; flood water was in their home for approximately four days, rendering it uninhabitable.[255] The Burnham property flooded to a level of 4 to 5 feet when Addicks reservoir crested at 109.1 feet; flood water was present in the home for at least seven days, rendering it uninhabitable for months.[256]

---

[251] Appx15 (quoting Appx9184) (stating that "it is only a matter of time before the reservoirs flood off government-owned land").

[252] Appx16 (quoting Appx8480).

[253] Appx16.

[254] Appx18.

[255] Appx19.

[256] Appx19-20; Appx32.

### 4. The Government Fails to Identify Any Clearly Erroneous Factual Finding By the Trial Court, Which Rejected its Necessity Defense

The trial court correctly applied this Court's ruling in *TrinCo Investments*,[257] reasoning that the Government must prove both actual emergency and an imminent danger to prevail on its necessity defense:

> The necessity defense is just what it says it is: a defense. It has always required a showing of imminent danger. The use of the word 'necessity' in the title is no accident. The defense requires both an actual emergency and an imminent danger met by a response that is actually necessary. Not every seizure of a private citizen's property will qualify.[258]

In *TrinCo*, this court reversed the trial court's dismissal of a taking claim arising from the Government's setting fire to the plaintiff's property to help quell a forest fire, holding that to "automatically absolve the Government's action in any case involving fire control stretches the doctrine too far."[259] Applying the *TrinCo* rule to the facts of this flooding case, the trial court properly rejected the Government's argument—repeated on this appeal—that the mere fact of a severe storm (even a record-breaking one) does not automatically prove this emergency.[260] The Government cites no case in which the necessity defense prevailed where the

---

[257] *TrinCo Inv. Co. v. United States*, 722 F.3d 1375 (Fed. Cir. 2013).

[258] *See id.* at 1380.

[259] *Id.* at 1378.

[260] *See* Appx45 ("That this case involved a severe tropical storm, and a record-breaking one at that, is not enough to infer an actual emergency.").

facility causing the flooding was designed, constructed and operated by the Government to purposefully accomplish that very thing.

As the trial court found,[261] the only reason the Corps was constrained to operate Addicks/Barker as it did in 2017 was because the Government designed and constructed the facility to operate exactly as it did—despite knowing its actions would "eventually place the Government in the position of having to flood the area within the reservoirs with the accompanying damages in order to protect downstream improvements in the event of a severe future storm."[262]

"Thus, it was not that the government had to respond to Tropical Storm Harvey as an emergency that necessitated the flooding of private land," but rather that the government had made a calculated decision to allow for flooding these lands years before Harvey, when it designed, modified, and maintained the dams in such a way that would flood private properties during severe storms.[263]

The Government has the burden of proving its necessity defense. Whether the Government proved necessity in this case is an issue of fact: "[E]ach [necessity defense case] 'must be judged on its own facts.'"[264] Here, the Government fails to

---

[261] Appx45.

[262] Appx8864.

[263] Appx45 (citing *In re Upstream Addicks & Barker,*138 Fed. Cl. at 669).

[264] *TrinCo Inv. Co.*, 722 F.3d at 1379 (quoting *United States v. Caltex*, 344 U.S. 149, 156 (1952)).

show that the trial court's factual finding—that there was no necessity sufficient to prove this defense—was clearly erroneous.[265]

As the *TrinCo* court held, "[i]t would be a remarkable thing if the Government is allowed to take a private citizen's property without compensation if it could just as easily solve the problem by taking its own."[266] Here, the Government acted to induce reservoir flooding with no legal right: "'[m]ore lands could have been purchased upstream for reservoir storage at relatively low prices.'"[267] But instead of acquiring all the land needed for the reservoirs, including the Banker/Burnham properties, "[t]he Corps based its land-purchase decision, at least in part, on a calculation that 'the expected damages of inundating pastures and rice fields' would be less than the cost of buying additional land."[268]

"Put simply, the dams were designed to contain more water than the acquired land could hold."[269] Had the Corps designed them to hold less water, or acquired more land, the Banker/Burnham properties would not have flooded when tropical storm Harvey hit. When the storm did arrive in 2017, the Government operated the Addicks/Barker facility exactly as the Corps had designed and

---

[265] *See Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1292 (Fed. Cir. 2002).

[266] *TrinCo Inv. Co.*, 722 F.3d at 1380.

[267] Appx7 (quoting Appx9133); *see generally* Appx9117-9151.

[268] Appx9.

[269] Appx7.

constructed it over the decades, in accordance with its normal flood control regulation found in the 2012 Water Control Manual, all to *intentionally* flood lands, including Banker and Burnham's. The Government, in short, chose to appropriate a perpetual flood easement by physically invading Plaintiffs' homes with floodwaters held back and controlled by its project.

### 5. The 1928 Flood Control Act Did Not Repeal Banker/Burnham's Fifth Amendment Right to Just Compensation

The Government cites Section 702(c) of the 1928 Flood Control Act, claiming it is a background principle limiting the scope of Banker/Burnham's property rights: "No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place."[270] This provision has been found to possibly bar a tort claim for subsurface flooding,[271] for personal injuries from negligent operation of a federal reservoir,[272] and for failure to warn of an impending flood.[273] The courts have consistently interpreted this statute as an immunity provision.[274]

---

[270] 33 U.S.C. § 702(c).

[271] *See Central Green Co. v. United States*, 531 U.S. 425 (2001).

[272] *See United States v. James*, 478 U.S. 597 (1986).

[273] *See National Mfg. Co. v. United States*, 210 F.2d 263 (1954).

[274] *See, e.g., James*, 478 U.S. at 598-599 ("This case presents the question whether the Flood Control Act's immunity provision in 33 U.S.C. § 702c . . . bars recovery where the Federal Government would otherwise be liable under the Federal Tort Claims Act . . . ."); *Central Green Co.*, 210 F.2d at 426.

The Government fails to explain what limitation that provision imposes on property rights—and why it is not—as the courts have uniformly held—a prohibition on tort claims that has no effect on Banker/Burnham's constitutionally protected property rights.

This Court has held that Tucker Act claims are not affected by this immunity provision. In *California v. United States*,[275] this Court held enforceable a contract provision that the United States would reimburse the state of California for various costs incurred in operating an irrigation and flood control project, rejecting the Government's claim that it "was not required to contribute its share because it was immune under the Flood Control Act of 1928."[276] This Court explained that the Tucker Act's waiver of immunity "arises not from the Tucker Act itself, but from some substantive right guaranteed by or granted in the underlying document upon which jurisdiction is based,"[277]— here, the Fifth Amendment. The 1928 immunity provision did not affect Banker/Burnham's just compensation rights under the Fifth Amendment, for a statute cannot amend the Constitution.[278] Even if the Government were correct in characterizing the Flood Control immunity provision as a background principle of property law, that would not affect

---

[275] *California v. United States*, 271 F.3d 1377 (Fed. Cir. 2001).
[276] *Id.* at 1380.
[277] *Id.* at 1382.
[278] *See Scranton v. Wheeler*, 179 U.S. 141, 184–85 (1900).

Banker/Burnham's property rights in this case because that statute does not purport to repeal their right to just compensation—which is all they claim in this case. They could have no reasonable expectation that their property rights were altered by the statute because the statute did not, as a matter of law, impact their property rights nor their right to just compensation, nor their right to bring suit in the Court of Federal Claims under the Tucker Act. In short, the Flood Control immunity provision has no impact at all in this case, as the trial court held and as this Court also held in *Milton*.[279]

### D.    The Damages Awards to Bankers and Burnham Were Just Compensation, Not Consequential Damages

Just compensation requires putting the property owner "in as good a position pecuniarily as if his property had not been taken." [280] The trial court is given broad discretion to award damages.[281] The trial judge can modify methodology,[282] award damages even when the court does not fully agree or credit a methodology,[283] and "resolve conflicting evidence by weighing the evidence and making its own

---

[279] *See* Appx29.
[280] *Olson v. United States*, 292 U.S. 246, 255 (1934).
[281] *See Banks v. United States*, 721 F. App'x 928, 941 (Fed. Cir. 2017).
[282] *Id.*
[283] *Id.*

findings."[284] The operative test for courts is evaluating evidence "on the quantum of damages[] shown to a reasonable approximation."[285]

In this case, the Government does not challenge the trial court's valuation of the flowage easements for the Banker and Burnham properties, nor develop any argument why those damages awards were improper. The Government has therefore waived any objection to the easement valuations of $200,279.34 for Bankers and $57,237.81 for Burnham.

The Government argues that the trial court erred in awarding three categories of damages to the bellwether Plaintiffs: value of lost furniture and other household effects; cost of structural repair to make their homes habitable again; and costs of temporary housing while their homes were uninhabitable. But the Government's argument fails to recognize that Banker/Burnham's just compensation claim for personal property destroyed by the flooding is separate from the flowage easement claim,[286] that the cost of structural repair to make their homes habitable is a proper measure of just compensation,[287] and that rental value for the loss of use while their homes were uninhabitable is also a proper component of just compensation.

---

[284] *Id.* (quoting *Precision Pine & Timber, Inc.*, 596 F.3d at 833).

[285] *Id.* (quoting *Arkansas Game & Fish*, 736 F.3d at 1379).

[286] *See generally Ideker Farms, Inc. v. United States*, 71 F.4th 964 (Fed. Cir. 2023).

[287] *See generally Vaizburd v. United States*, 384 F.3d 1278 (Fed. Cir. 2004).

The Government erroneously labels these items as consequential damages. But consequential damages are those that are "collateral to those caused by the government's physical appropriation of a property right[.]"[288] "The line between direct and consequential damages is drawn where the 'owner's relation . . . to the physical thing' ends and 'other collateral interests which may be incidental to his ownership' begin."[289]

### a.    Banker/Burnham's Personal Property Is Compensable as a Property Interest Separate from the Flowage Easement

The Fifth Amendment protects private property "without any distinction between different types."[290] "The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home."[291]

The trial court found that the Bankers lost $16,527.41 in personal property. The trial court also found that Burnham lost $21,088.63 in personal property.

The Government does not challenge the trial court's valuation of this tangible personal property. Nor does it argue that this personal property was not taken. Those arguments are therefore waived.

---

[288] *Ideker Farms, Inc. v. United States*, 71 F.4th 964, 987 (Fed. Cir. 2023).

[289] *Id.* at 987 (quoting *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945)).

[290] *Horne v. Department of Agriculture*, 576 U.S. 350, 358 (2015).

[291] *Id.* at 352 (citation omitted).

The Government's sole argument for reversing Banker/Burnham's damage awards for their personal property destroyed in the flood is that this award constitutes consequential damages—that the Government only took the easement, and not the furniture and household effects. This Court rejected that same argument in its recent *Ideker Farms*[292] decision, holding that the crops destroyed by the Government-caused flood were a separate property interest claim from the flowage easement.[293]

Just like the crops in *Ideker Farms*, the destroyed furniture and other personal property of Banker/Burnham here gave rise to a separate and independent taking claim, for which just compensation was due.

### b.    The Cost to Cure Structural Damage Is a Proper Measure of Just Compensation

There is no single method of determining just compensation.[294] Structural repair costs (cost to cure) are a proper method of determining just compensation, provided it is "reasonable and of sound economy for the nature of the property."[295]

---

[292] *Ideker Farms, Inc. v. United States*, 71 F.4th 964 (Fed. Cir. 2023).

[293] *Id.* at 987-988.

[294] *See Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1369 (Fed. Cir. 2012) ("To award just compensation, a court must sometimes deviate from the traditional permanent taking-diminution in value and temporary taking-rental value approaches.").

[295] *Vaizburd v. United States*, 384 F.3d 1278, 1286 (Fed. Cir. 2004).

64

Cost of necessary repairs may be a sole award or may be a component of just compensation together with other elements of damage.[296]

The homes of Bankers/Burnham were seriously damaged by the flooding caused by the Army Corps of Engineers. The Bankers' home was flooded for four days,[297] leaving structural damage to the home and destroying thousands of dollars of personal property.[298] The home underwent remediation for seven months, after which the Bankers were finally able to move back in. Burnham's home was flooded with four to five feet of standing water for at least seven days.[299] With most of her personal property destroyed, and the home uninhabitable for months, she sold what she described as her "forever" home "as is."[300] Both the Banker's/Burnham's total just compensation award was offset to account for assistance they had received from FEMA, ensuring that they did not receive a greater award than the loss they sustained.[301]

The trial court's "award for structurally flooded properties reflects both the fact that the easement grants the government the permanent right to impound water

---

[296] *See generally Banks*, 721 F. App'x 928.
[297] Appx19.
[298] Appx19.
[299] Appx19.
[300] Appx19-20.
[301] Appx67.

within the homes on the properties, and the structural damage the government caused by taking the easement."[302]

### c.    Lost Use Value Is a Proper Component of Fifth Amendment Just Compensation

When a court awards just compensation, that award should be enough to put the owner of the property "in the same position monetarily as he would have occupied if his property had not been taken."[303] These costs can be recoverable because they account for what the owner lost to the taking. The Court's award of displacement costs (for the loss of use of her property) to Burnham adequately compensates her for what she lost as a result of the taking.

Burnham was unable to live in her forever home again after she was forced to evacuate. She had to secure rental housing until she sold the home "as-is," incurring $7,043[304] in rental costs. The costs incurred by Burnham would not have happened had the Government not taken her property, and in awarding her these costs, with the offset from FEMA,[305] the trial court's award placed Burnham in the position she would have been in had the property not been taken. The trial court's award of those costs was proper.

---

[302] Appx76.

[303] *United States v. Reynolds*, 397 U.S. 14, 16 (1970).

[304] This amount was reduced by 50% due to Burnham's co-tenancy with her fiancé (a non-plaintiff).

[305] Referring to the 50% reduction due to the co-tenancy of a non-plaintiff. *See supra* at n.301.

**Conclusion**

Banker/Burnham do not ask for "perfect flood control," as the Government suggests.[306] What they do ask for is that when the Government designs and builds a dam and reservoir system that will foreseeably flood their land, it should first acquire the right to flood that land instead of adopting a flood-first pay-later plan—or not at all—as the Corps did here. And, if the Government insists on adopting such a plan, it should, at a minimum, commit to paying the full award of constitutionally required just compensation for the taking when the probable flood does occur. The Constitution does not permit the Government to construct facilities that directly, naturally, and foreseeably flood private property without acquiring a flowage easement, and then refuse to pay for the taking.

Banker/Burham ask this Court to affirm the trial court's entry of final judgment in their favor.

Respectfully submitted,

/s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA LAW, LLC
1150 Connecticut Avenue, NW
Suite 1050
Washington, DC 20036
(202) 822-6760 (telephone)
(202) 822-6774 (facsimile)
roger@marzulla.com

---

[306] Govt's Corrected Opening Brief (June 27, 2023), ECF No. 25 at 29.

Dated:  September 22, 2023

nancie@marzulla.com

Principal Counsel for Plaintiff-Appellees, Christina and Todd Banker and Elizabeth Burnham

Edwin Armistead Easterby
The Easterby Law Firm, PC
1502 Glourie Drive
Houston, Texas 77055
  (713) 936-9365
  armi@easterbylaw.com

Of Counsel Plaintiff-Appellee,
Elizabeth Burnham

Vuk S. Vujasinovic
VB ATTORNEYS, PLLC
6363 Woodway Dr., Suite 400
Houston, Texas 77057
713-224-7800
vuk@vbattorneys.com

Of Counsel Plaintiffs-Appellees,
Christina and Todd Banker

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2023-1363, -1365, -1366 &-1412

**Short Case Caption:**  Ablan v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☐    the filing has been prepared using a proportionally-spaced typeface and includes  13,910  words.

☐    the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐    the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/22/2023

Signature:  /s/ Roger J. Marzulla

Name:  Roger J. Marzulla

Save for Filing