Nos. 2023-1363, 2023-1365, 2023-1366, 2023-1412

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**EDGAR ABLAN, ET AL.,**
*Plaintiffs*

**CHRISTINA BANKER, TODD BANKER**
*Plaintiffs-Appellees*

v.

**UNITED STATES,**
*Defendant-Appellant*

---

2023-1363

---

Appeal from the United States Court of Federal Claims in Nos. 1:17-cv-01409-CFL, 1:17-cv-09001-CFL, Senior Judge Charles F. Lettow

---

# REPLY BRIEF OF PLAINTIFFS-CROSS-APPELLANTS

---

Daniel H. Charest
Emery Lawrence Vincent, Jr.
BURNS CHAREST LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
(469) 904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Ian Heath Gershengorn
*Counsel of Record*
Elizabeth B. Deutsch
Leslie K. Bruce
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6869
igershengorn@jenner.com

*Counsel for Plaintiffs-Cross-Appellants*
*Christina Micu, Scott Holland, Catherine Popovici, Kulwant Sidhu*

(case caption continued below; additional counsel listed in signature block)

______________________

**SANDRA ABDOU, ET AL.,**
*Plaintiffs*

**ELIZABETH BURNHAM**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

______________________

2023-1365

______________________

Appeal from the United States Court of Federal Claims in Nos. 1:17-cv-01786-CFL, 1:17-cv-09001-CFL, Senior Judge Charles F. Lettow

______________________

**CHRISTINA MICU, AND ALL OTHERS SIMILARLY SITUATED, SCOTT HOLLAND, CATHERINE POPOVICI, KULWANT SIDHU,**
*Plaintiffs-Cross-Appellants*

**ELISIO SOARES, SANDRA GARZA RODRIGUEZ, ERICH SCHROEDER, MARINA AGEYEVA, GLENN PETERS, VIRGINIA HOLCOMB,**
*Plaintiffs*

v.

**UNITED STATES,**
*Defendant-Appellant*

______________________

2023-1366, 2023-1412

______________________

Appeals from the United States Court of Federal Claims in Nos. 1:17-cv-01277-CFL, 1:17-cv-09001-CFL, Senior Judge Charles F. Lettow

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 5

I. The Government Cannot Take A Permanent Flowage Easement On The Majority Of Ms. Popovici's Property For Free. ........ 5

II. The Government Cannot Prove An Offset Of FEMA Aid Is Appropriate. ........ 12

A. The Government's Novel Offset Test Lacks A Basis In Precedent. ........ 12

B. The Government Failed To Meet Its Own Proposed Test. ........ 14

III. Class Certification Is The Only Appropriate Means To Adjudicate This Case And Was Improperly Denied Based On Timing Alone. ........ 17

A. Class Certification Is The Only Practical Way To Resolve Thousands Of Identical Liability Claims. ........ 17

B. The CFC Wrongly Denied Class Certification Due To Timing Alone. ........ 18

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers, AFL-CIO*, 565 F.2d 1364 (6th Cir. 1977), *superseded by statute on other grounds*, *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56 (1982) ....................22

*Arkansas Game & Fish Commission v. United States*, 736 F.3d 1364 (Fed. Cir. 2013) ....................6

*ATEN International Co., Ltd. v. Uniclass Technology Co., Ltd.*, 932 F.3d 1371 (Fed. Cir. 2019) ....................21, 22

*Bauman v. Ross*, 167 U.S. 548 (1897) ....................13

*Brown v. Legal Foundation of Washington*, 538 U.S. 216 (2003) ....................11

*Causby v. United States*, 75 F. Supp. 262 (Ct. Cl. 1948) ....................6

*CCA Associates v. United States*, 667 F.3d 1239 (Fed. Cir. 2011) ....................14

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) ....................5

*Gadsden Industrial Park, LLC v. United States*, 956 F.3d 1362 (Fed. Cir. 2020) ....................9

*Hendler v. United States*, 175 F.3d 1374 (Fed. Cir. 1999) ....................2, 12

*Ideker Farms, Inc. v. United States*, 71 F.4th 964 (Fed. Cir. 2023) ....................6, 7

*Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1 (1984) ....................8

*Olson v. United States*, 292 U.S. 246 (1934) ....................13, 16

*Otay Mesa Property, L.P. v. United States,* 779 F.3d 1315 (Fed. Cir. 2015) ....................10

*Pete v. United States*, 531 F.2d 1018 (Ct. Cl. 1976) ....................6

*Ridge Line, Inc. v. United States*, 346 F.3d 1346 (Fed Cir. 2003) ....................8

*Siqueiros v. General Motors LLC*, No.16-cv-7244, 2021 WL 2115400 (N.D. Cal. May 25, 2021) .......... 23

*St. Bernard Parish Government v. United States*, 887 F.3d 1354 (Fed. Cir. 2018) .......... 5

*United States v. Dickinson*, 331 U.S. 745 (1947) .......... 5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. V .......... 5

**OTHER AUTHORITIES**

RCFC 23, Rules Committee Notes, 2002 Revision .......... 19

2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:89, Westlaw (6th ed. database updated Nov. 2023) .......... 23

2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:92, Westlaw (6th ed. database updated Nov. 2023) .......... 23

3 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 7:11, Westlaw (6th ed. database updated Nov. 2023) .......... 20

Petition for Rehearing En Banc, *Ideker Farms, Inc. v. United States*, No. 2021-1849 (Fed. Cir. Sept. 11, 2023), ECF 102-1 .......... 7

7AA C. Wright et al., *Federal Practice & Procedure* § 1784.1 (3d ed. 2005) .......... 23

## INTRODUCTION AND SUMMARY OF ARGUMENT

The CFC made three incorrect holdings. The government can salvage none. *First*, the CFC found the government liable for taking a permanent flowage easement over the majority of Ms. Popovici's land but awarded her no just compensation for that easement. *Second*, the CFC deducted from Plaintiffs' just compensation awards emergency aid provided by FEMA to hundreds of thousands of Harvey victims without any evidence that the aid paid or reimbursed Plaintiffs for the taken property at issue in this litigation. *Third*, the CFC denied class certification based on the timing of Plaintiffs' motion alone, even though the court had instructed Plaintiffs to seek certification at that very stage of litigation. The government does not—because it cannot—defend any of these holdings based on blackletter law or on-point precedent. Each requires reversal.

On Ms. Popovici's free flowage easement, the government admits (as it must) that the CFC awarded her $1,401.49 for structural repairs to her garage and $0 for the taking of a permanent flowage easement over 55.9% of her land. *See* U.S. Response & Reply 32. The government's initial reaction is that the limited payout Ms. Popovici did receive—the $1,401.49 for garage repairs—should be reduced to $0 because, the government insists, property owners should not be compensated for damage to real structures. *Id.* at 33. From there, the government openly advocates—for the first time on appeal—that "it was permissible for the court to award zero

dollars[] … in just compensation for the taking of an easement" over Ms. Popovici's property. *Id.*

That cannot be correct. For one, it runs headlong into the plain text of the Fifth Amendment. For another, even if no compensation were acceptable in the rare case, $0 cannot be squared here with *both* parties' expert submissions showing significant diminution of value to Ms. Popovici's land—evidence that the CFC never questioned and elsewhere credited. As the CFC found, government-induced flooding caused "significant harm" to the property. Appx31-32; *see* Appx21. It prevented ingress and egress from Ms. Popovici's home for days and caused putrid odors that severely compromised habitability. And, because the easement is permanent, it will happen all over again upon the next major storm. No surprise, the government cannot cite a single case involving a flowage easement or a remotely similar taking in which any court deemed $0 "just." The Fifth Amendment protects Ms. Popovici and the thousands of property owners like her who live at the edge of the Addicks and Barker flood pools and experienced flooding of their land but not their homes.

As to the CFC's decision to offset FEMA aid from Plaintiffs' just compensation awards, the government concedes that this case does not fit the only test that this Court or any other has used to permit offsets: the "special benefits" test. U.S. Response & Reply 34; *see Hendler v. United States*, 175 F.3d 1374, 1379-80 (Fed. Cir. 1999) (articulating test).

Rather than apply binding precedent (which requires reversal), the government urges this Court to invent a "duplicate recovery" test and offset any governmental assistance that could have compensated Plaintiffs for taken property. U.S. Response & Reply 34-35. Even if this novel test were adopted, the government did not proffer evidence to satisfy it at trial. The government made a litigation decision not to introduce evidence of the specific items for which FEMA paid. Instead, it proffered evidence about the broad categories of aid. It was reversible error for the CFC to assume duplication in the absence of any showing that FEMA actually paid for the specific property interests at issue in this case. Plaintiffs were held to their burden to prove particularized, item-by-item losses; the government, too, must be held to its burden to prove any specific offsets from those losses.

Finally, as to class certification, the government does not acknowledge the elephant in the room. Classwide litigation is the only sensible way to resolve the government's liability. There are thousands upon thousands of property owners whose homes and businesses lie within the Addicks and Barker reservoirs and, as a result, suffered flooding when the government impounded water upstream to save downtown Houston during Harvey. *See* Appx19. All these potential claimants have identical cases regarding the government's liability; this is one government project and one government-induced flood. Plaintiffs have therefore been clear from the outset that they intended to move for certification of a liability-only class.

What's more, Plaintiffs moved for class certification at the stage directed by then-Chief Judge Braden and reiterated by Judge Lettow. The government does not seriously dispute any of this. Instead, it argues that the CFC was "incorrect" in giving that direction, and that Plaintiffs should have known better than to comply with the court's case management plan. U.S. Response & Reply 37, 40.

Even setting Plaintiffs' reasonable reliance aside, the government's arguments—like Judge Lettow's order denying class certification—ignore the reality that, on the law, nothing about how class litigation works under the Rules of the Court of Federal Claims casts doubt on the propriety of post-liability class certification. The out-of-circuit decisions that Judge Lettow and the government cite to show that such timing is disfavored applied Federal Rule of Civil Procedure 23, which contains key differences. Specifically, under the CFC's bespoke rules, there are only opt-in, not opt-out, classes, and only liability, not damages, classes; thus, the reasoning of those out-of-circuit decisions (which specifically disfavor opt-out and damages classes) has limited force. Paying particular attention to the way that class litigation works in the CFC—often in cases like this involving a single government action that gives rise to identical liability against numerous claimants—is necessary to avoid making every such case *Winstar* redux.

## ARGUMENT

### I. The Government Cannot Take A Permanent Flowage Easement On The Majority Of Ms. Popovici's Property For Free.

The government concedes that the only way to understand the CFC's just compensation to Ms. Popovici is awarding $1,401.49 to compensate for "repairs to her garage" and $0 to compensate for taking a permanent flowage easement across the majority of her property. U.S. Response & Reply 32. The government first attacks the $1,401.49 as "erroneous" because, it says, property owners should not recover for structural damage. *Id.* at 33. The government goes on to defend the proposition that "it was permissible for the court to award zero dollars, or a nominal value in just compensation for the taking of an easement." *Id.* That the government is forced to make that stunning statement shows the CFC's award cannot be sustained.

The Fifth Amendment's plain text requires reversal. It commands that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. So, too, does every single takings precedent from the Supreme Court and this Court. *See, e.g.*, *United States v. Dickinson*, 331 U.S. 745, 750 (1947) ("[F]or all that the Government takes it must pay."); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) ("The government must pay for what it takes."); *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1359 (Fed. Cir. 2018) (collecting cases

showing that it is "well established" that the government cannot take a flowage easement without paying just compensation).

This Court has consistently awarded compensation for every distinct property interest appropriated by the government. *See, e.g.*, *Ark. Game & Fish Comm'n v. United States*, 736 F.3d 1364, 1370-72 (Fed. Cir. 2013) (compensating for damage to trees plus the taking of a flowage easement); *Pete v. United States*, 531 F.2d 1018, 1032-34 (Ct. Cl. 1976) (compensating for cabin barges plus the taking of property on which they resided); *Causby v. United States*, 75 F. Supp. 262, 263-64 (Ct. Cl. 1948) (compensating for the decrease in rental value of property plus chickens that lived on the property); *see also* Micu Br. 47-50 (discussing same).

The government does not seriously attempt to square $0 with the Constitution's text or any of this precedent, let alone this Court's most recent word on the subject. In *Ideker Farms*—a decision the government critiques in its liability discussion but does not so much as acknowledge in its just compensation and cross-appeal arguments—this Court reaffirmed the "straightforward rule" that "courts must determine whether the Government appropriated a property interest and ensure the owner is compensated for that interest." *Ideker Farms, Inc. v. United States*, 71

F.4th 964, 987-88 (Fed. Cir. 2023).[1] "Damages are not limited to the 'time of the alleged taking' and include 'past, present, and prospective' damages." *Id.* at 987 (quoting *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1359 (Fed. Cir. 2003)). Property owners are therefore entitled to just compensation for structural damage and "personal property destroyed by [the] flooding," in addition to "the value of the flowage easement." *Id.* After all, the "Government-induced flooding[] … *directly* took both a permanent flowage easement on Plaintiffs' land and destroyed" Plaintiffs' personal property and structures. *Id.* (emphasis in original).

Applying that familiar analysis reveals the CFC's basic error in calculating Ms. Popovici's award. At the liability stage, the CFC found that the government had both caused structural damage to Ms. Popovici's garage and taken "a permanent right to inundate [her] property with impounded flood waters" in the future. Appx72, Appx75-76. At the just compensation stage, however, the CFC awarded damages only for the garage repairs and not for the taking of the flowage easement. *Compare* Appx75-77, *with* Appx81. That decision requires reversal. The CFC could not give the government a flowage easement for free.[2]

---

[1] The government declined to seek *en banc* review of *Ideker Farms*' just compensation holding. *See* Petition for Rehearing En Banc, *Ideker Farms*, No. 2021-1849 (Fed. Cir. Sept. 11, 2023), ECF 102-1.

[2] As mentioned, the government further posits that the CFC erred in awarding Ms. Popovici even $1,401.49 for garage repairs. U.S. Response & Reply 33; *see also id.*

The government initially suggests that the CFC was justified in awarding Ms. Popovici "less compensation than other claimants" because the water did not reach her house. U.S. Response & Reply 32. But that is a difference of degree, not kind. As this Court and the Supreme Court have said time and again, "if the government wants an easement, it must pay for it." *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1354 (Fed. Cir. 2003) (alterations omitted) (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 842 (1987)). There is no exception for easements that burden only land and non-residential structures. *Ideker Farms*, in fact, was such a case.

---

at 30 (arguing structural repair costs should not be "added … to the easement's full fair market value"). But that is precisely the framework that this Court has repeatedly endorsed, including in *Ideker Farms*. *See supra* 6-7.

Rather than try to reconcile its argument against structural repairs with the established line of cases, the government quotes *Kirby Forest Industries, Inc. v. United States* for the platitude that "[j]ust compensation … means in most cases the fair market value of the property on the date it is appropriated." 467 U.S. 1, 10 (1984); *see* U.S. Response & Reply 30. That is true. But *Kirby Forest* did not address the destruction of personal property or structural damage in addition to the taking of an easement. Plus, *Kirby*'s qualified "in-most-cases" recitation of general just compensation principles does not, by its own terms, overcome the specific rule applied in *Ideker Farms*, *Arkansas Game*, and other cases requiring compensation for each property interest impeded.

Ultimately, the government fights that blackletter law with policy arguments, complaining it is unfair that the government may "hav[e] to pay for structural repairs again in the future if flooding recurs." U.S. Response & Reply 30. Whether the government would, in fact, be liable for property damage upon a future flooding is a question for that later case. It is not, in any event, a ground to ignore blackletter law regarding the proper valuation of just compensation in cases of taking by flood.

The government lists several cases it says support taking an easement for free. *See* U.S. Response & Reply 33. But its citations are a hodge-podge of inapposite fact patterns (involving no permanent flowage easements) where the record lacked reliable evidence of a diminution in value to the property.

*Gadsden Industrial Park, LLC v. United States*, for example, involved the Environmental Protection Agency's (EPA) remediation of a steelmaking site and addressed compensation for iron byproducts (slag, kish, and scrap) that the EPA removed in the cleanup. 956 F.3d 1362, 1364-66 (Fed. Cir. 2020). The Court first explained that the plaintiff had not established ownership over "any particular subset of slag," so had no claim for compensation for its taking. *Id.* at 1370. As to the other byproducts, the Court affirmed the CFC's reasoned finding that there was a total "absence of evidence" of any market value. *Id.* at 1371; *see also id.* at 1368 (describing the CFC's findings on the lack of reliable evidence).

This cross-appeal is about the taking of a flowage easement over a sizeable tract of real property in a residential suburb of a major American city, not the remediation of worthless debris heaps left over from smelting. It is beyond dispute that the 55.9% of Ms. Popovici's lot that the CFC found inundated by government-induced flooding has market value. *See* Appx57, Appx60, Appx63. At trial, even the government offered affirmative expert evidence of the diminution in the flooded

land's value ($5,000). Appx63. And Plaintiffs' experts valued the easement in the six figures. Appx60. The CFC was not free, *sub silentio*, to assume a $0 diminution.

Nor does *Otay Mesa Property, L.P. v. United States*—the only case the government cites involving an easement of any kind—get the government where it wants to go. 779 F.3d 1315 (Fed. Cir. 2015). In *Otay Mesa*, the government appropriated an easement to install several motion sensors on undeveloped land near the Mexican border. *Id.* at 1318-19. Each sensor measured one cubic foot and was buried underground, except for an antenna that broke the soil. *Id.* at 1318. The government's easement was also "unilaterally terminable" by the landowner, should he or she wish to develop any portion of the property. *Id.* at 1318-19, 1325. On those facts, this Court affirmed the CFC's finding that the easement was "minimally invasive" and had "no material effect on the developable land." *Id.* at 1320, 1322, 1325. That affirmance was based, as well, on the CFC's findings that the plaintiff's valuation suffered from "foundational flaws." *Id.* at 1323. In light of those express findings, this Court held that it was not clear error for the CFC to have credited the government's $0 valuation. *Id.* at 1324.

Again, that is a far cry from this case. Here, the government's flowage easement covered the majority of Ms. Popovici's property (again, in a Houston suburb, not undeveloped desert). Appx57. The CFC found that the flooding prevented ingress and egress for days and generated putrid odors that severely

impacted habitability. *See* Appx21, Appx31-32. And that was just the first flood. Because the government retains a "permanent right to inundate [Ms. Popovici's] property with impounded flood waters," and "a future storm of significant magnitude" is "nearly inevitable," these harms "can be expected" to occur all over again. Appx31, Appx33, Appx72-73. Ms. Popovici's reality is miles from the minimally invasive and unilaterally terminable easement in *Otay Mesa*.

Finally, *Brown v. Legal Foundation of Washington* involved interest income generated by funds held in lawyers' trust accounts. The case rehearses the maxim that "the 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain." 538 U.S. 216, 235-36 (2003). That is true. But that principle only reinforces that the CFC was not free to award $0 in the face of substantial expert evidence presented by both parties that the property owner lost something of significant value in the government's taking of its easement.

The government's argument ignores not only the Fifth Amendment, but also the broader importance of this issue. This is a bellwether proceeding. Thousands of Houston homeowners whose properties, like Ms. Popovici's, lie on the lip of the government-made reservoirs and were partially inundated by government-induced flooding during Harvey could be left without a cent should the CFC's $0 award stand. This Court should reverse and remand with instructions either to apply the

correct framework for calculating just compensation, or else to find no flowage easement was taken. A permanent flowage easement cannot be taken without compensation.

## II. The Government Cannot Prove An Offset Of FEMA Aid Is Appropriate.

In defense of the CFC's erroneous decision to offset FEMA aid from Plaintiffs' just compensation awards, the government does not even attempt to argue it can meet this Court's offset test—the "special benefits" test. *See Hendler*, 175 F.3d at 1379-80. Instead, it urges this Court to apply a less "rigid" standard that no court has ever used. U.S. Response & Reply 34. Even were the government's novel "duplicate recovery" test correct, the government's strategic choice to withhold evidence of itemized FEMA assistance means that it cannot prove any actual "duplicate recovery." There is zero evidence that FEMA paid for a single property interest for which Plaintiffs seek compensation in this litigation.

### A. The Government's Novel Offset Test Lacks A Basis In Precedent.

Under this Court's special benefits test, the government is entitled to an offset only if it proves that the benefit: (1) "inure[s] specifically to the landowner who suffered the partial taking"; and (2) is "associated with the ownership of the remaining land." *Hendler*, 175 F.3d at 1380. There is no debate that FEMA aid fails that test. FEMA provided the same relief to hundreds of thousands of Harvey victims regardless of whether they suffered a taking at the government's hands. *See* Micu

Br. 59-60; U.S. Response & Reply 34 & n.6. Rather than try to satisfy that binding test, the government brushes it aside in a footnote and proposes an alternative standard, "duplicate recovery," which the government derives from the axiom that "a landowner must be made whole, but not more." U.S. Response & Reply 34 & n.6; *see id.* at 31.

The government cannot identify a single decision where this Court or any other has offset from a just compensation award any sum that does not meet the special benefits test. In fact, the first case the government cites in support of its relaxed alternative, *Bauman v. Ross*, *was itself* a special benefits case. 167 U.S. 548, 572 (1897). There (as in *Hendler*), the Supreme Court held that compensation for a parcel partially taken must be offset to account for the enhanced value of the remaining land. *Id.* at 574-75. *Bauman* endorses special benefits as the correct test.

The government's next case, *Olson v. United States*, recites the familiar phrase that a property owner "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." 292 U.S. 246, 255 (1934). Again, all true. But *Olson* was not talking about offsets. "The only substantial question" was the valuation of property—not whether the government may be excused from paying that value in full. *Id*. at 248.

In short, the government cannot get around the reality that *Hendler* and the line of special benefits cases are the *only* body of case law to permit any offset to

constitutionally mandated just compensation awards. The CFC did not apply that test in awarding the offset, so no offset is allowed.

**B. The Government Failed To Meet Its Own Proposed Test.**

Even were the government's homespun test adopted, the government has not met it. The government does not dispute that, at trial, it bore the burden of proving the applicability and amount of every alleged offset. *See CCA Assocs. v. United States*, 667 F.3d 1239, 1245 (Fed. Cir. 2011). And the government acknowledges that it chose not to introduce evidence of the specific property interests that FEMA paid for or reimbursed. *See* U.S. Response & Reply Br. 35. That is, the government did not compare apples to apples—*i.e.*, the specific items FEMA assistance covered to the specific items for which Plaintiffs seek compensation in this case. Instead, the government introduced evidence only about the *categories* of aid that Plaintiffs received.

With respect to Mr. Holland, for example, the government presented letters he received from FEMA approving his application for three types of emergency assistance. *See* Appx9789, Appx9792, Appx9795, Appx9798. One type, "personal property assistance," was awarded "to help repair or replace essential items damaged by the disaster." Appx9798. FEMA's award letter does not specify what items the aid covered or define eligible items. And the government did not attempt to introduce other evidence on this subject. Instead, it tried to maximize potential offsets by

arguing that *all* such aid should be deducted from Mr. Holland's award for personal property. *See* Appx68 (finding that Leistra-Jones classified "personal property assistance" as an offset against Plaintiffs' personal property losses).

The government employed this category-based stratagem for every type of FEMA relief it sought to offset. *See* Appx68 (explaining that Leistra-Jones mapped five types of FEMA assistance onto three categories of Plaintiffs' property losses); *accord* Appx7694 (testimony of Leistra-Jones describing his methodology). For instance, "critical needs assistance," according to FEMA's award letters, "cover[ed] items such as food, water, infant formula and diapers, hygiene products, and prescriptions." Appx9789, Appx9801. Because "*those types* of items [were] in [Plaintiffs'] personal property inventories," the government claimed an offset for the sum total of *all* critical needs assistance payments. Appx7695 (emphasis added).

The government's category- rather than item-based approach left a gaping hole in the record. Consider Mr. Holland's personal property inventory. Which of his items are "essential" for FEMA's purposes? His bed, medication, microwave, pet food, and contact lenses were all taken. *See* Appx11402, Appx11405-07, Appx11413. But which, if any, were purchased with or reimbursed by FEMA money? The record contains no answers. *See* Appx9878, Appx9789-800, Appx9832-33. The most the government's evidence can show is that the categories

of FEMA aid are "similar" to items Plaintiffs' claim as property losses. U.S. Response & Reply Br. 35.

Being in the ballpark is not good enough for the Fifth Amendment. *See Olson*, 292 U.S. at 254-55 (stating the government must pay the "full and exact equivalent" of the property taken). The CFC therefore committed reversible error when it held that "payments through FEMA … compensate plaintiffs for the very same property losses and damages they seek to recover here." Appx.84.[3] The CFC could not have reliably concluded that FEMA aid compensated Plaintiffs for the losses claimed in this case—there was simply zero evidence to that effect.[4]

To be sure, the government could have gone item by item to try to prove offsets. It had many opportunities to develop such facts and meet its burden. The government could have, for instance, presented materials from Plaintiffs' FEMA applications identifying the items for which they sought reimbursement. Or it could have proffered receipts of Plaintiffs' purchases with the FEMA money. Or, if it

[3] The government is wrong that "Plaintiffs do not challenge [the CFC's] finding as clearly erroneous." U.S. Response & Reply 35. Plaintiffs do challenge—and have consistently challenged—that finding. *See* Micu Br. 61-62.

[4] The only itemized evidence the government *did* proffer proves the peril of its category-based strategy. As to Ms. Micu, the government submitted evidence that FEMA paid for one piece of personal property: a dehumidifier. *See* Appx11540. The CFC, however, did not deduct that amount from Ms. Micu's just compensation award because "it does not offset a loss Ms. Micu claimed." Appx84 n.36. The same mismatch may be true of every Plaintiff; the government failed to prove otherwise.

lacked that evidence in its own records, the government could have pursued answers in discovery. But the government did *none* of those things—and it must be held to its litigation choices. Accordingly, the CFC's offset ruling should be reversed.

## III. Class Certification Is The Only Appropriate Means To Adjudicate This Case And Was Improperly Denied Based On Timing Alone.

This is a textbook case for liability-only class resolution. The CFC was wrong to deny class certification based only on "the timing of th[e] motion." Appx205. Neither Judge Lettow below nor the government on appeal grapples with the CFC's bespoke Rule 23. But the differences between this Circuit's Rules—which address the unusual classes employed in the CFC—and the Federal Rules of Civil Procedure explain why post-liability certification in this case does not pose the traditional problems. And the government concedes, as it must, that Plaintiffs moved for class certification at the stage of litigation indicated by the CFC.

### A. Class Certification Is The Only Practical Way To Resolve Thousands Of Identical Liability Claims.

The government cannot dispute that the only reasonable means to resolve this case is through class litigation. Thousands upon thousands of potential-claimant property owners reside in the Addicks and Barker reservoirs. *See* Appx19, Appx201, Appx2284. All those property owners have the same takings claim: They live upstream and within the flood zone of dams that the government designed, built, and operated to protect downtown Houston. As a result of those dams, their properties

were flooded when Harvey hit. All relevant facts were pleaded, discovered, litigated, and tried below, while hundreds of cases were stayed. *See* Appx2-3, Appx201.

Because of the identical liability at the heart of this case, Plaintiffs were clear from day one that they intended to certify a liability-only class. *See* Appx2285. Plaintiffs moved for class certification at the stage indicated by the CFC, and, as discussed below, the CFC was wrong to deny class certification due to timing alone, particularly given the litigation history here. *See infra* Part III.B.

The critical point is this: Without class adjudication, this case will become *Winstar* 2.0—or worse. *See* Micu Br. 64 & n.15, 67. Thousands and thousands of claims from the same taking will clog the CFC and this Court for years. It will be Groundhog Day every day, the courts forced to adjudicate the same liability over and over and over again. This case provides a perfect example of why liability-only RCFC 23 classes exist.

### B. The CFC Wrongly Denied Class Certification Due To Timing Alone.

On the merits of the CFC's denial, the timing of Plaintiffs' motion did not supply adequate reason to deny class certification, either as a matter of law or based on this litigation history.

1. As a matter of law, the government suggests that Judge Lettow did not abuse his discretion in denying class certification based on timing alone because he cited out-of-circuit decisions describing post-liability class certification as generally

disfavored. *See* U.S. Response & Reply 37, 40-41. But that argument ignores the clear differences between Federal Rule of Civil Procedure 23 and Rule of the Court of Federal Claims 23 that limit the persuasive force of other circuits' rules.

Specifically, in the CFC, there are only liability classes, not damages classes, and only opt-in classes, not opt-out classes. *See* RCFC 23, Rules Committee Notes, 2002 Revision ("[U]nlike the FRCP, the court's rule contemplates only opt-in class certifications, not opt-out classes. The latter were viewed as inappropriate here because of the need for specificity in money judgments against the United States, and the fact that the court's injunctive powers—the typical focus of an optout class—are more limited than those of a district court."). For that reason, other circuits' concerns about "one-way intervention" in opt-out or damages classes are inapposite. *See* Appx203-05 (relying on *In re Citizens Bank, N.A.*, 15 F.4th 607, 618 n.11 (3d Cir. 2021), and collecting similar cases).[5]

To be clear, RCFC 23 does not have (b)(2) (injunctive) or (b)(3) (damages) classes; every class certified under RCFC 23 is fundamentally unlike a (b)(3) class

---

[5] The government attempts to avoid litigating this point by claiming Plaintiffs have "forfeited th[e] argument" that other circuits' presumption against post-liability class certification is "incorrect." U.S. Response & Reply 37. But Plaintiffs argued that "there is no bar to post-liability class certification here" and distinguished this case from those where "courts avoid post-liability class certification" under Federal Rule of Civil Procedure 23. Micu Br. 67-68 (collecting authorities). Plaintiffs have consistently argued that post-liability certification is permissible in the appropriate case—including this one, as Judge Braden explained. *See id.* at 16-17, 67-68.

because it addresses only liability. And other circuits, construing the Federal Rules of Civil Procedure, "have been more willing to entertain motions for class certifications following a trial on the merits" in (b)(2) classes because it does not present the same policy concerns as in (b)(3) classes. 3 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 7:11, Westlaw (6th ed. database updated Nov. 2023). To that end, as Judge Braden recognized, courts *do* certify classes—in appropriate cases—after discovery and merits practice. *See* Appx2307-08. Neither Judge Lettow nor the government addresses these nuances.

2. There are reasons specific to this case and its litigation history that make denying class certification based on timing both wrong and fundamentally unfair. Plaintiffs moved for class certification at the stage of litigation indicated first by Judge Braden and then echoed by Judge Lettow.

The government responds that Judge Braden's statements about the timing of class certification were "incorrect" and "erroneous" and that nothing "prohibit[ed]" Plaintiffs from filing an earlier class certification motion. U.S. Response & Reply 37-39. (Though the government admits that Judge Braden was "adamant" about deferring class certification until after the liability phase. *Id.* at 37.) The government does not acknowledge the cases establishing Plaintiffs' right to reasonably and in good faith rely on the court's statements about its scheduling and case management. *See* Micu Br. 66 (collecting cases).

The government concedes that Judge Lettow, too, made clear that he "strongly prefer[red]" to address jurisdiction before certification. Appx2206; U.S. Response & Reply 39. The government then skips over the reality that the court did not "go[] past the jurisdictional" step until the court's liability determination, Appx2207—meaning that Plaintiffs fully complied with the court's statements in deferring class certification until that point, *see* Micu Br. 63-66.

The government responds instead that Judge Lettow made these remarks in "conversation" with Plaintiffs' counsel, so it could not be clear error for the CFC to have found "no basis" in the record that the CFC "asked" Plaintiffs to defer their class certification motion. U.S. Response & Reply 39. But the conclusion does not follow from the premise. That Judge Lettow made statements in colloquy does not change the fact that they constituted his express preferences for case management and scheduling, on which litigants have a right to rely. *See* Micu Br. 66 (quoting statements). The government nevertheless insists that this Court should defer to the district court's construction of the record. U.S. Response & Reply 39-40. But the district court's discretion does not extend to entirely ignoring parts of the record. *See ATEN Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd.*, 932 F.3d 1371, 1373 (Fed. Cir. 2019) (a district court "necessarily abuse[s] its discretion if it based its ruling on … a clearly erroneous assessment of the evidence").

The government falls back on the axiom that parties have an "independent duty to assess whether the court's proposal adequately protected their interest." U.S. Response & Reply 40. It points to cases saying that litigants should not "seek legal advice" from courts or court staff. *See id.* (citing *In re Am. Safety Indem. Co.*, 502 F.3d 70, 73 (2d Cir. 2007)). But that is not this situation. The court's statements were in the context of case management and scheduling, and Plaintiffs had no reason to think that deferring class certification proceedings until after a jurisdiction determination would compromise their ability to so move or that they would otherwise be prejudiced by this deferral. The CFC set the schedule, and Plaintiffs followed it.

What's more, though Plaintiffs were substantially prejudiced by Judge Lettow's about-face on the timing of class certification, the government cannot identify any reason the government was prejudiced by the motion's timing. *See Alexander v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 565 F.2d 1364, 1372 (6th Cir. 1977) (holding post-liability-trial class certification motion should be certified absent "a showing of actual prejudice to the protesting party"), *superseded by statute on other grounds*, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982). To the contrary, the government has never been able to articulate any argument it would have made or litigation strategy it would have pursued had class certification happened at a different juncture—

though it has been asked repeatedly. *See* Appx2573, Appx2595, Appx2631, Appx2637. Thus, the CFC's denial of class certification based on the timing alone was an abuse of discretion and should be vacated.[6]

## CONCLUSION

For the foregoing reasons, the CFC's decision as to Ms. Popovici's just compensation and its denial of class certification should be vacated and remanded, and the CFC's FEMA offsets should be reversed.

---

[6] At the very least, this Court should clarify that class certification is not off the table for other claimants. Certification of an issues class in this bellwether case is warranted so that the factual matters common to all flooding victims (such as the size and shape of the reservoirs and the knowledge held by the government) need not be re-litigated over and over and over again based on the same facts, documents, and witness testimonies. *See generally Siqueiros v. General Motors LLC*, No. 16-cv-7244, 2021 WL 2115400, at *1, *26-27 (N.D. Cal. May 25, 2021) (certifying different statewide classes using previously designated bellwether claimants as class representatives following grant of partial summary judgment in favor of defendants); *see also* 7AA C. Wright et al., *Federal Practice & Procedure* § 1784.1 (3d ed. 2005) (discussing certification of "hybrid" class actions under Rule 23); 2 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:92, Westlaw (6th ed. database updated Nov. 2023) ("Numerous courts across the circuits have long utilized issue certification in a vast array of different circumstances." (citations omitted)); *id.* § 4:89 (noting Rule 23(c)(4) "may enable a court to achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action" (quoting *Manual for Complex Litigation*, Fourth, § 21.24)).

Dated: December 13, 2023

Respectfully submitted,

*/s/ Ian Heath Gershengorn*
Ian Heath Gershengorn
*Counsel of Record*
Elizabeth B. Deutsch
Leslie K. Bruce
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6869
igershengorn@jenner.com

Daniel H. Charest
Emery Lawrence Vincent, Jr.
BURNS CHAREST LLP
900 Jackson Street
Suite 500
Dallas, TX 75202
(469) 904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

Charles W. Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, TX 77004
(713) 533-1704
charles@irvineconner.com

*Counsel for Plaintiffs-Cross-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system, which caused a copy of this document to be delivered by electronic means to counsel of record.

Dated: December 13, 2023

/s/ *Ian Heath Gershengorn*
Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6869
igershengorn@jenner.com

*Counsel for Plaintiffs-Cross-Appellants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. Cir. R. 28.1(b)(3) because this brief contains 5,737 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Times New Roman font.

Dated: December 13, 2023

/s/ *Ian Heath Gershengorn*
Ian Heath Gershengorn
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6869
igershengorn@jenner.com

*Counsel for Plaintiffs-Cross-Appellants*